Margaret BECKHAM, Respondent,

v.

Edwin R. EGGLESTON and Violet Eggleston, Appellants.

No. 23214.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Melvin J. Duvall, Dale, Potter & Flynn, by Whitney W. Potter, St. Joseph, for appellants.

Strop, Watkins, Maughmer & Roberts, by O. W. Watkins, Jr., Goldman & Goldman, by Abe Goldman, St. Joseph, for respondent.

HUNTER, Presiding Judge.

This is an action by plaintiff-respondent, Margaret Beckham, against her brother, Edwin R. Eggleston and his wife, Violet Eggleston, defendants-appellants, for partition of a house and lot located in St. Joseph, Missouri, and for related relief.

The property was formerly the home of and owned by Mary Ann Eggleston, the mother of Margaret and Edwin and of

three other children. Mary Ann Eggleston died intestate June 27, 1948, and each of her five children thereby acquired a ⅕th interest in the property.

Prior to her mother's death, respondent lived in the home with her mother and helped take care of her. After the mother's death there was some talk among the five children about the ultimate disposition of the property. Appellant Edwin Eggleston told respondent he would handle the matter. Suggesting to the other heirs that respondent should continue to occupy it, appellant Edwin Eggleston placed a value of $2,500 on the old and dilapidated house, and for sums of $500 and less procured from the other three children assignments of title of their interest in it to himself and respondent. Respondent continued to live in the first floor of the house, and subsequently disbursed a total of $5,804.14 on repairs, improvements, taxes, note payments and miscellaneous expenses of the property. This sum included $1,500 received by respondent as the proceeds of a note executed by the parties to Mrs. C. E. Krementz, and the remainder came from respondent's own funds. Respondent also obligated herself to pay Henry Michel and John Bremer $1,892 for their labor in improving the premises, and owed them that sum at the time of the trial. Respondent had never paid rent to appellants on account of her occupancy, nor had she paid them anything on account of $720 in rents received from a tenant in the house. Appellant Edwin Eggleston had paid $158.60 for items not here in issue.

The trial commenced on April 20, 1959, and lasted several days. At its conclusion the trial court decreed partition by sale and found that the rental value of that portion of the premises occupied by respondent after her mother's death and before improvements were made thereon was merely nominal, and charged the sale proceeds with a net credit to respondent of $3,435.54 on account of her expenditures, and a credit to her of $1,892 on account of

the Bremer-Michel obligation for labor. Appellants were credited with the $158.60 paid by Edwin Eggleston and the $720 in tenant's rent received by respondent.

On this appeal appellants make two contentions: First, that the trial court erred in finding that the rental value of that part of the premises occupied by respondent after her mother's death and prior to improvements made on the premises was only of nominal value. Second, that the trial court erred in charging the proceeds of the partition sale with the $1,892 Bremer-Michel bill, and in charging it with the additional sum of $3,425.54 for improvement expenses, for the assigned reason that there is no evidence they were contracted or agreed upon between respondent and appellants.

We are met at the outset with respondent's motion to dismiss the appeal for appellants' failure to include a statement of the facts relevant to the issues presented for determination as required by Rules of Civil Procedure, rule 83.05(c), V.A.M.R. Respondent's motion is meritorious. The scant statement contained in appellants' brief essentially is but a statement of the general nature of the action brought, together with a statement of the decree rendered by the trial court; appellants' unsuccessful action thereafter to obtain a new trial; their appeal to the Supreme Court, and that Court's transfer of the appeal to this court on jurisdictional grounds. Although appellants argue vigorously that they have submitted the required statement and have endeavored to comply with the mentioned rule their brief does not contain a fair and concise statement of the facts relevant to the questions presented for determination. However, it is only in exceptional cases that appellate courts dismiss appeals where counsel in good faith has endeavored to follow the rules concerning contents of briefs. In the case before us we will undertake to wade through the lengthy transcript, locate the testimony and evidence relevant to the is-

sues presented, and thereby avoid dismissal of the appeal. In the exercise of our discretion we overrule the motion to dismiss the appeal.

Although it is the generally accepted rule at common law that a tenant in common who occupies all or more than his proportionate share of the common premises and who has not agreed to pay therefor or ousted or excluded his cotenant or cotenants is not liable for such occupancy alone, to his cotenants for rent or for use and occupation, a different rule applies in many jurisdictions where such tenant in occupancy seeks judicial aid to obtain reimbursement for expenditures made in connection with the property. Goforth v. Ellis, Mo.Sup., 300 S.W.2d 379, 383; 86 C.J.S. Tenancy in Common § 46, p. 407.

■■ In this state it is settled that a cotenant, who has enjoyed the occupancy of the premises, who seeks and is to be granted an allowance for improvements made thereon subjects himself to the crediting of his out-of-possession cotenant with the reasonable value of the premises he occupied, and, in partition equity may set off that rental value against the improvements, taxes, and other charges paid by the tenant in exclusive possession although he has not ousted his cotenant. Goforth v. Ellis, supra, 300 S.W.2d loc. cit. 379(6); Byrne v. Byrne, 289 Mo. 109, 233 S.W. 461; Martin v. Martin, 218 Mo.App. 617, 266 S.W. 336; Annotation, Cotenants—Rents and Profits—Use, 51 A.L.R.2d 394, 459, Sec. 20; 14 Am.Jur., Cotenancy, Sec. 43, p. 30, 1960 Pocket Supplement. It is also the rule, which appellants tacitly concede, that such cotenant out-of-possession is entitled to have taken into account only the rental value of his interest in the land or premises thereon as the land or premises would have been without the improvements made by the cotenant in possession. Byrne v. Byrne, supra, 233 S.W. loc. cit. 465(7); Armor v. Frey, 253 Mo. 447, 161 S.W. 829, 839(22).

■ The trial court found that the premises without the improvements added by respondent had only a nominal rental value and therefore made no allowance for the item. There was persuasive evidence that at the time of Mary Ann Eggleston's death and until substantial improvements were made to the premises by respondent the entire house, both inside and outside was in such a state of disrepair as to then border on being uninhabitable and to have only a token rental value, if any. The house was not modern. It was very old. There was no furnace. Gas and coal oil heaters were resorted to for heat. There was no running water in the so-called "apartment" upstairs. Inside the house the plaster was falling off. The windows were bad, and attic windows were broken, letting pigeons into the attic. The roof leaked. The back porch was about to fall off. There were old gas fixtures still hanging and old style electrical fixtures with pull strings hanging from the ceiling. On the outside all the paint had long since worn off; inside there was just old varnish. The stone retaining walls were in bad crumbling condition with the stones loose and falling. The stone steps were in bad condition. The weatherboarding was loose and coming off. The plumbing was obsolete and of the exposed type. Waterpipes leading to the upstairs bath were exposed in downstairs rooms. The wall paper was soiled, cracked and bad. The floors were badly worn and in poor shape. The kitchen had a sagging metal ceiling. The kitchen floor sagged appreciably. Ceiling joists were rotten underneath the upstairs bath. The bathroom flooring was rotten. The kitchen flooring was rotten or termited. There were termites in the north wall of the laundry room. The timbers were rotten underneath the west corner of the house; the foundation needed overhauling, and the flue needed tuckpointing.

Although Edwin Eggleston for the purpose of "settlements" among the heirs told them he thought the house to be worth

$2,500, so as to give each heir a $500 value, he stated at the trial he had told respondent the house was so bad "it ought to be condemned." Another of the heirs testified "the place couldn't have been worth possibly more than $1,500, if it was worth that much." Other evidence, including pictures of the house, support the view that its value was very small. While respondent as owner of a ½ interest in the house may have been willing to live in it until it was repaired and rehabilitated it is apparent that in the open market the rental value prior to the repairs and improvements of the portion she occupied was nominal. Its condition was one of continuing and increasing deterioration. The evidence supports the finding of the trial judge that the questioned rental value was nominal, and that "the house, if it hadn't been repaired with plaintiff's money would have been untenantable." On our own review of the evidence we adopt that finding.

In so saying we have not overlooked appellant Edwin Eggleston's testimony that he and respondent had an understanding about the rent and that he told her that "the lower apartment" would rent for about $60 a month and that she agreed to that. Appellants contend this evidence was undisputed. However, our review of the record reveals that respondent's own evidence and the plain import of that of several of her witnesses amply refuted the existence of any such agreement. The trial court found the resultant fact issue in respondent's favor. We are content to permit the trial court's finding on this contested fact issue involving the credibility of the witnesses on the subject to stand with the comment that the finding that there was no rental agreement between respondent and Edwin Eggleston is supported by substantial and credible evidence. We find no merit in appellants' first contention.

In presenting their second contention of error it is appellants' position that the Bremer-Michel account is unreasonable; was incurred by respondent without the consent of appellants; was not made honestly, nor in good faith, and was not of a necessary and substantial nature, materially enhancing the value of the premises. Also, that the court erred in decreeing that respondent be paid $1,892 from the proceeds of the sale to discharge the Bremer-Michel obligation.

■■ The rule is that the right to compensation for improvements, made without the consent of cotenants, is not a legal right, but may be enforced in equity for payment out of proceeds of partition, when they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property, when the circumstances show that it would be equitable to do so. Goforth v. Ellis, supra; 68 C.J.S. Partition § 139, p. 221; 40 Am.Jur., Partition, Sec. 39, pp. 32–33. Also, compensation for such improvements is allowed where the improvements have been made with the consent of other cotenants, either express or implied, or unless otherwise inequitable, where the other cotenants with knowledge of the work being done have stood by, without protest and permitted him to proceed to his detriment. 14 Am.Jur., Cotenancy, Sec. 49; Annotations, 76 A.L.R. 314; 51 A.L.R.2d 455; 122 A.L.R. 229.

Respondent's total expenditures on the common property were $5,804.14. This figure included $1,500 loan proceeds obtained by the parties and turned over to respondent, making respondent's net expenditures of her own funds to be $4,304.14. This figure was further reduced to the sum of $3,-425.54 as a result of credits given appellant by the trial court. At the trial respondent commenced the substantiation of each item of her gross expenditures of $5,804.14. However, as a result of an off the record discussion appellants formally admitted that the correct total of all these expenses is $5,804.14 and further admitted, as stated by the court: "that all of the expenses listed on two separate sheets of paper that are a part of exhibit, numbered as items 1 to 43

are correct expenditures." These expenditures were of such things as the cash consideration paid by respondent for the shares of two of the heirs in which appellants received an interest; taxes; payments on the mentioned note that the parties signed to obtain funds for repairs and improvements and other money paid for improvements and repairs.

■ By admitting at the trial that these expenditures were correct, appellants have waived any right to challenge their correctness on this appeal. See, Voelpel v. Wuensche, Mo.Sup., 74 S.W.2d 14, 16. There is credible evidence to support a finding that as to many, if not all, of these expenses incurred in the repair and improvement of the house the appellants gave either express or implied consent. For example, respondent testified that appellant Edwin Eggleston told her that if she would record the deeds she possessed which gave him a half interest in the other heirs' share of the property he would help her fix the property up and pay his part of all the expense. She stated she didn't question his word but that he had never paid her for this contemplated work. She said she and appellants couldn't get a bank loan because the house was not modern, and there was no furnace, so they jointly borrowed $1,500 from her friend, Mrs. Krementz, to enable them to have money to help fix up the place. That this loan was made and the money so used is not disputed. Appellant Ed Eggleston when asked if he didn't think the condition of the house was so bad that it ought to be condemned replied: "That's what I told her and that's the reason we had to raise some money to get it in shape." He also testified he agreed with her to spend $900 to fix the outside of the house. The siding contractor talked with Ed Eggleston about his work to be done, and this contractor testified his contract was with both appellant and respondent. Also, appellant Eggleston visited the house several times while repair and improvement work was being done and knew of it.

Even if we were to accept appellants' contention that respondent lacked or exceeded appellants' consent to repair and improve the property, the evidence supports a finding that they were made in good faith, to improve the dilapidated, practically uninhabitable property and not to embarrass the cotenants. The pre-existing condition of the premises created a necessity for repairs and improvements without which the property would be subject to further serious damage and deterioration. The work performed was necessary to the reasonable preservation and enjoyment of the property and materially enhanced its value. Expert witnesses testified as to the reasonableness of the charges made. The circumstances show it would be equitable to credit respondent accordingly.

■ Appellants object particularly to the Bremer-Michel bill as being unreasonable, unauthorized and not in good faith. According to the evidence respondent hired Henry Michel and John Bremer to make a part of the needed repairs and improvements. They worked from October, 1956, through October, 1958, usually at nights or on weekends. Respondent worked alongside of them and performed considerable work. Respondent paid for the materials used and the men kept their own time records, charging $2 per hour. They had agreed to be paid when the work was completed and did not consider it finished at the time of the trial. A detailed list of the work performed by Bremer and Michel was introduced at the trial. Essentially it consisted of such things as plastering, painting, carpentry, levelling and supporting floors and electrical and plumbing work. Leonard Bainter, an expert witness experienced in contracting and estimating, testified he had made an independent estimate of $4,023.69 on the work done by Bremer and Michel and the value of the materials used, and that their labor charge was fair and reasonable. Appellants' own witness, Kantz, testified as an expert that his charge for such work would have been

at the rate of $2.25 per hour. Our conclusion, which is in accord with the ruling of the trial court, is that the work performed by Michel and Bremer was reasonably necessary, was contracted for in good faith; that the charge made for it was fair and reasonable and that it resulted in improvements of a substantial nature, materially enhancing the value of the premises.

As to whether the Bremer-Michel work was authorized, the evidence shows that appellant Edwin Eggleston knew these two men were repairing and improving the premises, and apparently he acquiesced in their work. He testified he visited the house perhaps 10 or 15 times between 1948 and 1958 and that he saw these men working there during the latter two years. Michel testified that when he was employed he started to work on the porch and that " * * * at that time Ed came up there after the work was in progress and he was very well pleased with it. At another time they had some pointing to do on the flue, and Ed himself asked me at that time if I would do the pointing * * * At another time there was some cellar stairs that was all rotted out, and Ed asked me if I would put those cellar stairs in * * * "; that he was also there on other occasions when work was being done. We conclude the trial court properly allowed respondent credit for the Bremer-Michel bill.

Appellants charge it was error for the trial court to direct the sheriff to pay over to respondent from the proceeds of the public sale of the house the amount of this bill even though it might be allowed as a credit to her. The bill has been established as valid and owed. Both Bremer and Michel testified they look to respondent for their payment, and respondent admits she owes them that amount. Certainly, as among the parties themselves, the court in decreeing partition has the power, in doing full justice in the premises, to adjust all proper items of credit and debit between them, and to require the amount found to be due to be paid from the proceeds of the sale

of the property. See, 14 Am.Jur., Cotenancy, Sec. 40, pp. 107–08; 40 Am.Jur., Partition, Sec. 36, p. 31. We find no merit in appellants' contentions to the contrary.

Our independent review of the record has convinced us that the trial court decided the case correctly, and we affirm the judgment.

All concur.