**Lois Jean ORTMANN, Respondent,**

*v.*

**Kenneth Lynn ORTMANN, Appellant.**

No. 37726.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Feb. 8, 1977.

Alfred J. Rathert, Fenton, for appellant.

Charles P. Todt, Susan M. Hammer, Clayton, for respondent.

NORWIN D. HOUSER, Special Judge.

Appeal from a decree dissolving the marriage of Kenneth and Lois Ortmann. The only points of contention are (1) the provisions for division of the property and (2) the husband's liability for fees awarded to the wife's attorney.

At the time of trial the parties owned the following property held in their joint names: an unencumbered 7-room residence property valued by the parties at from $27,-000 to $35,000, and 21 shares of IBM stock then worth between $3,780 and $4,200.

The household furnishings in the home were purchased by the wife, out of her own earnings while employed at Maritz, Inc.

The wife was possessed of a 1974 Ford Mustang which she purchased to use in traveling to work (75 miles a day) and on which she owed $3,000. The wife had a checking account of $300 or $400. In addition to the debt on the Mustang the wife owed $2,000 (borrowed by the husband on his life insurance) and she owed her father $1,000 (borrowed for living expenses).

The wife's financial requirements each month included $383 for general expenses, $100 for her personal needs and $100 to maintain the parties' 17-year-old unemancipated daughter, whose custody was awarded to the wife. The wife was employed at IBM at a monthly salary of $875.

The only property owned separately by the husband consisted of his carpenter tools, hunting, fishing and camping equipment and a truck, which was demolished in an accident. The husband owed a psychiatrist $650 and owed another doctor $190 for treating him for pneumonia.

The circuit court found that the Mustang, the corporate stock, and the household furnishings were the separate property of the wife, and awarded these properties to her as such, ordering that she assume "all obligations therefor." The court found the residence property to be marital property, of the value of $27,000, and valued the husband's interest therein at $5,000. The husband was ordered to pay the wife $15 per week for the support of the 17-year-old daughter. The wife was allowed to continue occupancy of the residence until the emancipation of the daughter or the remarriage of the wife, at which time the residence was ordered sold and that out of the proceeds the husband be paid $5,000 for his equity. The court ordered the husband to pay the wife's attorney's fees in the sum of $1,800, and assessed the court costs against the husband.

(1) The division of the property

In his first point the husband complains that the distribution was unfairly weighted in favor of the wife and asserts error in awarding the wife the corporate stock as her separate property "because the IBM stock was marital property." He has no complaint about the awarding of the Mustang (on which there was a $3,000 debt) to the wife as her separate property, but he complains that the household furnishings should not have been ruled her separate property. The court justified its findings in these respects on the ground that these items were purchased "from her earnings."

The corporate stock in question was acquired by the wife under an option

which allows employees to buy the company's stock at 85% of market value. For 6 years during the marriage the wife had part of her salary withheld for the purpose of purchasing company stock. The shares were issued in the joint names of the parties. Under Chapter 452, RSMo 1969 where, as in this case, a spouse furnishes the consideration for and purchases property in the joint names of the husband and wife it will be presumed, in the absence of clear and convincing evidence rebutting the presumption, that such property is marital property unless it is shown by clear and convincing evidence that the property was acquired in exchange for property acquired prior to the marriage or that the transfer was not intended as a provision for a settlement upon or as a gift to the other spouse. *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo. App.1975). Since the purchase of the stock was made with earnings during the marriage, the stock purchased with the marital proceeds became marital property regardless of how title was taken. § 452.330. There is no evidence that the transfer of the IBM stock into the joint names of the parties was not intended as a settlement upon or gift to the husband, and the court therefore erred in designating the IBM stock as the separate property of the wife. It is marital property within the meaning of § 452.330.

■ The court further erred in holding that the household furnishings constituted separate property of the wife, notwithstanding she paid for them out of her earnings. They were acquired subsequent to the marriage and prior to a decree of legal separation; they do not fall within any of the exceptions listed in subparagraph 2 of § 452.330, and therefore the household furnishings are presumed to be marital property notwithstanding they were paid for out of the wife's earnings and regardless of whether the title was held individually by the wife or jointly with the husband. Subparagraphs 2 and 3, § 452.330, supra.

The Mustang is marital property for the same reasons but we will not disturb the court's designation of the Mustang as the separate property of the wife, since the husband makes no claim in this respect.

■ Having then determined that the marital property in contention consists of the residence, the IBM stock and the household furnishings we turn to the question whether the distribution was unfairly weighted in favor of the wife. This requires a consideration of all relevant factors, including the contributions of the spouses to the acquisition of the marital property, the value of the property set apart to each spouse, their economic circumstances, and the conduct of the parties during the marriage. § 452.330, subparagraph 1.

■ Over a period of 4½ years the wife saved $4,000 from her earnings while employed at a bank. This money was used as a down payment on the parties' residence property, which cost $8,000. A $4,000 loan on the house was paid from the husband's earnings. The highway department bought the property, paid the parties $15,000, then transferred the house to them with the right to remove the structure to another part of the property. The $15,000 was used to install a foundation for the house at its new location and to improve the house by installing plumbing, a septic tank, pouring a basement floor, building a 2-car garage, and enlarging the house from 24 × 32 feet to 24 × 79 feet. This work was done by the husband personally. Although the husband contributed nothing to the acquisition of the corporate stock or the house furnishings, he did from time to time and from job to job work in the construction industry "when he could," but according to the wife he did not put his family first and would spend money on himself "foolishly," such as spending four or five dollars at a tavern. His unemployment at time of trial was attributed to economic conditions in the building industry. In 1973 each of the parties earned approximately $9,900. Their joint income tax return for 1974 showed her income was $10,240; his either $9,600 or $9,700. The wife paid 90% of the bills during the year preceding the trial. Through her employment she has a hospital, major

medical and dental program covering her and her children. If disabled she would get 75% of her income for the first year, and then it would drop to 40%. It was reasonable to award the wife the right to occupy the home while the daughter, whose custody was granted to the wife, remains unemancipated at home, or until the wife is remarried. The husband's brief concedes this is not unreasonable. With respect to the conduct of the parties during the marriage the merits are all with the wife. Notwithstanding she worked in outside employment, constantly contributing to the common weal throughout the marriage, except during the infancy of the children, she performed all of the duties of a good wife, mother and homemaker. Her conduct as such was shown to have been exemplary. The husband conceded in his brief that her uncontradicted evidence "was to the effect that she had been a good mother to the children, and had been a good homemaker." He testified that his wife had been a good wife to him. To the contrary the evidence together with his admissions reveals him as a violent, abusive, undependable husband and father who has an admittedly serious drinking problem. He frequently cursed, threatened, frightened, embarrassed and intimidated the various members of the family. He mentally and physically abused his wife (striking her physically from time to time and tearing off an ear during one assault upon her) and has generally conducted himself in a manner completely disruptive of a normal home and family life.

A consideration of these and all other relevant factors substantiates and justifies a decree awarding the corporate stock and household furnishings to the wife as part of her share of marital property, permitting her to occupy the residence property temporarily and until the daughter is emancipated or the wife remarries, and insuring that upon the sale of the residence property she receive the lion's share of the proceeds.

■ In view of prevailing economic conditions, however, including the rising tide of inflation, the court erred in determining that upon the future sale of the residence property the husband's equity be paid him in a fixed sum or definite number of dollars. Instead, he is entitled to a percentage of the net proceeds of the sale of the residence property, after payment of all proper charges and expenses of sale. Considering all of the foregoing, and particularly in view of our holding that the corporate stock and household furnishings are marital property and not the wife's separate property, and having in mind the husband's contribution to the payment of the debt incurred when the house was first purchased, as well as his substantial efforts in improving the house after it was moved, the husband is allowed a percentage participation in the net proceeds of the sale of the residence property, when that sale occurs in the future, which percentage is hereby fixed at one-third (instead of a lump sum award of $5,000) and the wife is allowed the remaining two-thirds of the net proceeds.

### (2) The award of attorney's fees

The husband's second point is that the court erred in awarding the wife's attorney's fees in the sum of $1,800 "because there was no evidence before the court that respondent was unable to employ and pay her own attorneys fees"; that all of the evidence showed that the wife was employed and had sufficient income and resources with which to pay her counsel, while the husband at time of trial was unemployed and had no resources.

■ There was evidence, and the husband concedes, that the reasonable value of the legal services rendered by the wife's attorney was the sum of $2,025. The reason given by the court for awarding the wife $1,800 on this item was that the husband, during the time the case was on the docket, "has required a great number of Court appearances on the part of [the wife] and her counsel." There is no evidence that in requiring a great number of court appearances on the part of the wife and her counsel the husband engaged in abuse of process or harassment. Nor has she shown the amount of extra legal charges to which she has been subjected for the allegedly

unnecessary trips to court. The wife had the burden of proof on these matters but she has failed to make a sufficient showing to fix a dollar value on any such alleged impositions. Having failed to meet this burden the husband's liability for the wife's attorney's fees is to be treated the same as in any other case.

Section 452.355, RSMo 1969 provides: "The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount * * * for attorney's fees * * *." The fundamental consideration in determining whether the wife is entitled to an award of attorney's fees is whether she is possessed of sufficient means to prosecute or defend the action on her own. *L.J.S. v. V.H.S.*, 514 S.W.2d 1 (Mo.App.1974). The allowance is discretionary with the trial court and is to be exercised "in view of the circumstances of both parties, including the ability of the husband to pay." *S.G.E. v. R.L.J.*, 527 S.W.2d 698, 703[6] (Mo.App. 1975). The allowance is to be made where the wife "does not possess sufficient means of her own to finance the litigation, but there must be evidence to establish the wife's need to have the expense borne by the husband." *Larison v. Larison*, 524 S.W.2d 159, 161 (Mo.App.1975). It is the wife's need that warrants an award against the husband. She need not be destitute to be entitled to such an award, but as indicated in *Larison* for the wife to look to the husband for payment of her attorney's fees there must be a disparity of means to pay. This means that the husband's ability to pay must exceed that of the wife.

Under these controlling decisions and the evidence in this case the order requiring the husband to pay $1,800 as and for the wife's attorney's fees is unreason-able and constituted an abuse of discretion. The wife is in much better financial circumstances than the husband. She earns $875 per month; he is unemployed. She has a house to live in; he has none. She has money in the bank and corporate stocks worth several thousand dollars; he has no financial assets, no bank account, no stocks, nothing but his carpenter tools, and his hunting, fishing and camping equipment. She has already paid her lawyer $500 and is possessed of sufficient means to pay the balance. There is no disparity of means to pay in her favor; the disparity favors the husband. Without any income except that which he may receive from doing odd jobs as a carpenter, he is obligated to pay his own attorney's fees, $15 a week for child support and $840 doctors' bills, in addition to his regular monthly living expenses. He is simply not financially able to pay the wife's attorney's fees.

Accordingly, the decree of November 21, 1975 is ordered modified as herein provided with respect to what constitutes the marital property and how it shall be divided, and that part of the decree ordering the husband to pay $1,800 to the wife's attorney is reversed. The cause is remanded for the entry of a new decree, to be entered as of November 21, 1975, consistent with the views expressed in and the holdings of this opinion.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.