**Dennis Ray SAUER,
Plaintiff-Respondent,**

v.

**Susan Marie Sauer NEWMAN,
Defendant-Appellant.**

**No. 46869.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Jan. 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 8, 1984.

A.M. Spralding III, Cape Girardeau, for defendant-appellant.

Thomas A. Ludwig, Jackson, for plaintiff-respondent.

SNYDER, Judge.

This is an equitable action in which the respondent husband sued to obtain a share of the proceeds of the sale of a business, marital property which was not distributed to the parties in an earlier dissolution action. The appellant wife counterclaimed for a division of other marital property not disclosed by the husband to the court in the dissolution action (the issue of undisclosed marital property was not argued on appeal), and for an increase in child support.

The trial court awarded the husband $45,927.20 as his share of the proceeds of the sale of the business and rendered judgment in the husband's favor on the wife's counterclaim. As part of the judgment for $45,927.20 in favor of the husband the trial court ruled that if the wife failed to pay the amount of the judgment the husband could reduce the amount of his child support obligation. The wife appeals. The judgment is affirmed as modified.

The wife contends the trial court erred in: (1) admitting into evidence certain parol statements concerning the intent of the parties to divide the marital debt of the disputed business, known as "Station West;" (2) ordering appellant to pay $45,-927.20; (3) ordering a reduction in child support payments if the $45,927.20 judgment were not paid; and (4) not ordering an increase in the amount of child support.

In 1978, during the parties' marriage, the wife became interested in acquiring a busi-

ness known as "Station West." In order to acquire the business, wife and husband jointly borrowed the principal sum of $40,000.00 at nine per cent interest from the Bank of St. Mary's. The loan, which was a monthly installment loan with a balloon payment at the end of five years, was secured by a deed of trust on a farm which was the husband's separate property. The $40,000.00 was used to pay the entire purchase price of the business.

A dissolution petition was filed three days after the $40,000.00 note was signed. The parties entered into a property settlement which was incorporated into the dissolution decree. Although the property settlement failed to mention or divide Station West, the agreement by implication referred to the debt incurred to acquire the business:

> 3. The parties have interests in two farms, located in Perry County, Missouri, one such farm consisting of approximately 93 acres more or less, and the other consisting of approximately 165 acres. Copies of deeds to said farms are attached hereto and incorporated herein by reference as if fully set out herein. Upon the dissolution of this marriage, wife agrees to execute a quit claim deed in favor of husband for said farms and husband agrees to pay all obligations secured thereby.

> 12. Husband is to immediately upon the dissolution of this marriage execute a promissory note specifying his obligation for those sums evidenced in paragraph No. 6 above. Husband further agrees to simultaneously therewith execute appropriate second deeds of trust to secure said obligations with the home on Route # 1, Perryville, Missouri and the two (2) farms mentioned above as the subject of said deeds of trust.

Paragraph 6 set forth cash amounts which husband agreed to pay to wife in 1978, 1979, 1980 and 1981, a total of $83,500.00 to be paid in varying amounts.

The wife operated the Station West business and paid the monthly installments on the purchase money note until September, 1980. Then Station West, which was never a very successful enterprise, was forced to move and lost a substantial amount of business. The wife stopped making the installment payments on the note, thus forcing the husband to make the payments or lose his farm. She also sold her interest in the business for $55,000.00, $50,000.00 of which she placed in a revocable trust for the benefit of the parties' two children.

After assuming the responsibility to pay the note, husband brought the instant action seeking a division of the proceeds of the sale of Station West, a marital asset. Husband sought, and the trial court awarded him, a share of the $55,000.00 sale price which corresponded to the amount of the debt he assumed. Wife's counterclaims for a division of marital property allegedly undisclosed by husband and for an increase in child support were denied.

■ Wife first asserts that the trial court erred in allowing parol evidence of the parties' intentions regarding payment of the note and ownership of the business. Wife's brief does not point to specific instances in the record where the trial court erroneously admitted parol evidence, but merely argues that the trial court should not have allowed any testimony about the intent of the parties concerning who was to pay the purchase money debt owing to the Bank of St. Mary's. The point is denied.

Although wife's counsel at numerous times voiced an objection that parol evidence was being admitted, substantial evidence of the parties' intent that the wife pay the Bank of St. Mary's loan was received without objection.

There was nothing impermissible about the receipt of the evidence about the interests of the parties in the *marital asset* of Station West. The wife confuses *marital asset* with *marital debt*. Husband had no intention of varying the terms of the property settlement agreement. The agreement required him to pay the loan, which he did. However, even though the husband has the obligation to pay the debt, the

property settlement agreement is silent as to the division of Station West.

The trial court was entitled to hear evidence about the interest of husband in Station West which was marital property. § 452.330 RSMo.1978 (1982 Cum.Supp.). The law includes the contribution of a spouse as a factor to consider in the division of marital property. Evidence of the parties' contributions to the enterprise was admissible. § 452.330.1(1) RSMo.1978 (1982 Cum.Supp).

■ Moreover, there is no indication that the property settlement agreement was the entire agreement of the parties. Indeed, the fact that Station West was left out of the agreement indicates that the contract was incomplete. The parol evidence rule applies only to integrated agreements. *Rufkahr Const. Co. v. Weber*, 658 S.W.2d 489, 497[5, 6] (Mo.App.1983).

■ Wife's second contention is that the trial court erred in granting husband an interest in Station West equal to $45,927.20 because: (1) the parties orally agreed to allow wife to retain Station West; (2) the trial court abused its discretion in making the division because the trial court failed to consider the factors set forth in § 452.330.1 RSMo.1978; and (3) the trial court assessed the value of Station West as of a date two years after the dissolution. The points are denied.

Was there a binding oral agreement that appellant was to have all the business? Although there is some evidentiary support for appellant's position, the more reasonable view of the evidence is that the parties agreed that wife was to operate the business for her benefit and be responsible for both the assets and the liabilities of the business. It was still marital property and the parties agree it was not divided either in the property settlement agreement or by the trial court in the dissolution action.

The trial court found the husband was entitled to recover the $40,000.00 debt to the extent of his payment and assumption of the liability, a finding supported by substantial evidence. The trial court's judg-

ment in a bench-tried case will not be reversed "... unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

Although the wife views the issue as involving the application of the law to the facts, it was an evidentiary question whether the parties agreed that appellant was to have Station West without the liability for the $40,000.00. The trial court's resolution of the issue was supported by substantial evidence and was not against the weight of the evidence.

■ The second issue in the wife's second point relied on is whether the trial court abused its discretion by failing to consider the factors set forth in § 452.330.1 RSMo.1978 (1982 Cum.Supp.). The wife's contention that the trial court failed to consider all the factors is without merit.

An extended discussion of this point would have no precedential value. It is denied in compliance with Rule 84.16(b).

■ The third issue in the wife's second point relied on is whether the trial court erred in valuing the Station West at the time of the sale of the business, which occurred about two years after the dissolution of the marriage. This issue, too, is resolved in the husband's favor.

The trial court in effect valued Station West at $55,000.00 by awarding $9,072.80 to the wife and $45,927.20 to the husband. The husband's portion was calculated by adding the amount due on the Bank of St. Mary's loan, $37,214.42, to the total of the principal and interest payments made by the husband, $8,712.78. (The trial court judgment shows $9,072.80 as the total of the payments made by the husband, but this was obviously an inadvertent repetition of the amount awarded to the wife. The payments made by the husband totalled $8,712.78 according to the evidence.)

No Missouri cases have been cited and none have been found in which an appellate

court has decided the question whether a marital asset, divided in a separate equitable proceeding brought after a dissolution had been finally adjudicated, should be valued as of the date of dissolution or as of the later date when the trial court finally divides it between the parties. The facts in the case under review require a finding that the trial court was correct in valuing the Station West business at the $55,000.00 sale price because the business remained marital property until it was sold, not having been distributed in the earlier dissolution action. Because the business was marital property when sold, the sale proceeds were marital property. *See Ortmann v. Ortmann*, 547 S.W.2d 226, 229[1, 2] (Mo.App.1977).

The wife cites an Illinois case, *In re Marriage of Rossi*, 113 Ill.App.3d 55, 68 Ill.Dec. 801, 446 N.E.2d 1198 (1983), to support her theory that Station West should be valued at $40,000.00, the purchase price in 1978, and the value at the time of the dissolution decree. *Rossi* is distinguishable from the case under review. The court in *Rossi* valued a closely held corporation as of the date of financial statements for the corporation's fiscal year which ended five months after the entry of the dissolution decree. The value of the corporation was considered by the trial court in the dissolution proceeding. *Rossi* was not a case in which a dissolution court failed to consider a marital asset which was divided in a later equitable action, the situation under consideration here. The wife's point concerning the valuation of the business is denied.

■ In her third point relied on the wife maintains the trial court erred in ordering a reduction of the husband's child support obligations unless the wife paid the entire $45,927.20 judgment by February 1, 1983. The trial court's decree provided:

5. It is further ordered by this Court that in the event the defendant, Susan Marie Sauer Newman, does not comply with the payment of the sum of Forty-five Thousand Nine Hundred Twenty-seven Dollars and Twenty Cents ($45,-927.20) to plaintiff, Dennis Ray Sauer,

that child support due from the plaintiff to the defendant in the amount of Six Hundred Dollars ($600) per month be reduced by the sum of Four Hundred Dollars ($400) per month or upon emancipation of one child reduce same to no payment per month until the aforesaid judgment is satisfied.

It would seem to be advantageous to the wife to be allowed an alternative method of paying the judgment, but she has complained about this part of the judgment and her point is well taken.

"An award of child support is made to the custodial parent for the benefit of children who because of minority lack legal status to bring suit directly against a parent." *Martin v. Martin*, 539 S.W.2d 756, 757–758[3–5] (Mo.App.1976). It would be manifestly unjust to allow the husband to deprive his children of payments designed for their benefit in order to satisfy an obligation owed by the wife alone.

In *Hart v. Hart*, 539 S.W.2d 679 (Mo. App.1976), this court held that the non-custodial parent could not terminate his child support payments simply because the custodial parent removed the children from Missouri to California thereby effectively blocking the non-custodial parent's visitation rights. Similarly, in the present case respondent cannot be allowed to withhold child support payments merely if appellant fails to comply with the trial court's order.

Child support payments may not be held hostage to secure payment of obligations not owed by the children. The wrongs of the custodial parent should not be visited on her children. Therefore, the trial court's judgment should be modified to eliminate that portion permitting a reduction in child support payments if the award to the husband is not paid on time.

■ The wife's final contention is that the trial court erred in not increasing the amount of husband's child support payments. On the record the trial court could have found the child support payments to be adequate. Whether to modify child support obligations is a decision resting within

the discretion of the trial court if there is conflicting evidence. *See Huett v. Huett,* 643 S.W.2d 840, 842[2] (Mo.App.1982).

No abuse of that discretion has been shown. Further discussion of this point would have no precedential value. Rule 84.16(b).

The judgment is affirmed as modified.

DOWD, C.J., and CRIST, J., concur.