Virgil A. GRUNDEN,
Plaintiff–Respondent,

v.

Judith L. NELSON,
Defendant–Appellant.

No. 16484.

Missouri Court of Appeals,
Southern District,
Division Two.

June 27, 1990.

Motion for Rehearing or Transfer
Denied July 18, 1990.

Abe R. Paul, Pineville, for defendant-appellant.

Richard J. Collins, Joplin, for plaintiff-respondent.

SHRUM, Judge.

This is an equitable action filed in October 1988, in which respondent (herein referred to as "husband") sought an order of the trial court awarding him full ownership of real estate. The real estate had been the parties' marital home, but was not distributed by a decree entered in 1977 dissolving the marriage of husband and appellant (herein referred to as "wife"). The wife filed a counterclaim claiming that she was entitled to an undivided one-half of the real estate and sought partition of the same. The prayer for relief in wife's counterclaim requested that the real estate be sold "and the proceeds appropriated according to the respective rights of the parties." The real estate in question was sold by mutual agreement immediately before the trial. The parties proceeded to trial without amendment of the pleadings.

The trial court's order and judgment made the following findings: (a) upon entry of the divorce decree in 1977, the parties became owners of the real estate as tenants in common; (b) the value of the real estate, as of the time of the divorce decree, was $22,000.00; (c) the real estate was subject to a $14,653.28 deed of trust lien at the time of the divorce decree; (d) the equity in the real estate, at the time of the divorce decree in 1977, was $7,346.72; (e) ordered the husband to pay $3,673.36 to the wife as her full share and interest in the real estate, and (f) the wife was not entitled to recover any rent from husband because "the decree of divorce granted custody of two children to the Plaintiff who thereafter reared and provided for said children without material assistance from the Defendant until 1986...." Despite the fact that there was evidence adduced concerning post-divorce possession, repairs, and "fix-up" expenses, the trial court made no findings concerning those facts and did not rely upon such facts in rendering its decision.

Husband and wife were married in 1970; they were divorced in 1977. Custody of two children born of the marriage was placed with husband, and the children remained with husband until 1986, when they commenced living with wife. The marital home, financed with FmHA, was not divided, disposed of or mentioned in the decree of divorce. Husband lived in the house until May 1989, when it was sold by mutual agreement.[1] After payment of the deed of trust lien and closing costs, the equity remaining from the sale of the house was $25,368.36, one-half of which was received by the husband prior to trial, and the other one-half was left undistributed pending decision by the trial court.

After testifying that the real estate was not disposed of in the divorce decree, the husband testified as follows:

Q. Did you have any understanding or agreement with the defendant to what was going to happen to that property?

A. No, not really. Just never was any question that I was going to live there.

Q. Why was that?

A. Because she moved out.

Q. And there was never any issue between you and her as to who would have possession of the house?

A. No.

The husband testified he made some improvements on the house after 1977, including a new heating and air conditioning system, general remodeling, paper hanging, painting, woodwork, and "just redid the whole inside of the house." The husband also expended funds in 1989 to prepare the home for sale. The total repair and remodeling expense was $6,316.85. When asked about repair costs, the husband testified as follows:

Q. Mr. Grunden, as I understand it, the money that you spent for repairs was basically the result of the fact that the property was run down and basic wear and tear; isn't that correct?

A. That's true.

The wife testified that the repairs were necessary because the husband had al-

---

1. The sale price of the real estate was $38,000.00. After payment of mortgages, pro-rated taxes, etc., $25,368.35 remained for distribution.

Husband received $12,684.18 before trial and the question which remained was how the remaining $12,684.17 should be divided.

lowed the house to run down while he was in possession. The husband's testimony about the condition of the house, as of the time of the divorce, was as follows:

Q. Now the condition of the home in February of 1977 when you all were divorced was good; isn't that true?

A. I would say—yeah.

Q. And you have lived there solely to the exclusion of your former wife since February of '77 until about last month; isn't that true?

A. Yes, sir.

Q. You have never paid her any rent?

A. No, sir.

Husband and wife agreed that the husband had made all monthly mortgage payments to FmHA from February 1977, until the property was sold in May 1989. From the record before this court, those payments totaled approximately $15,184.00. Husband had no opinion as to the fair market rental value of the house and offered no evidence of such rental value from any other source. The wife testified, without objection, that the fair market rental value of the home was $200.00 per month from February 1977 through 1980; $250.00 per month from January 1981 through 1984; and $300.00 per month from January 1985 through April 1989.

There was a conflict in the evidence about possession of the real estate after 1977. The husband testified as follows:

Q. Virgil, after the divorce, then you have lived in the house since that time?

A. Yes, sir.

Q. Up until what time?

A. Up until we closed on the new place just this month.

Q. Was that in May of 1989?

A. Yes.

Q. And so you lived continuously there during that period of time?

A. Yes, sir.

*	*	*	*	*	*

Q. And you have lived there solely to the exclusion of your former wife since February of '77 up until about last month; isn't that true?

A. Yes, sir.

Q. You have never paid her any rent?

A. No, sir.

The wife's testimony on the possession issue was as follows:

Q. Then after you divorced in February of 1977, did you ever go back and live at the home from time to time?

A. Yes, I did.

Q. What period of time did you live there?

A. Off and on, I probably lived there a year or a year and a half at various different times since the divorce.

Q. But other than that, Mr. Grunden has had sole possession of the property; is that correct?

A. Yes, he has.

The wife appeals the trial court's judgment contending that the court erred: (a) in using the 1977 real estate value in making the division rather than the value at the time of the sale of the real estate; (b) in admitting testimony of a real estate appraiser as to 1977 real estate values without a proper foundation, and (c) in finding that the wife was not entitled to rent because the husband had raised the children from 1977 to 1986 without material assistance from the wife.

■ This court agrees with the wife's contention that the trial court erred in using 1977 real estate values as the basis for equitable division of sale proceeds derived from the 1989 sale of the real estate. Having so found, it will not be necessary to address the claimed error in admitting the real estate appraiser's testimony. In *Sauer v. Newman*, 666 S.W.2d 811, 815 (Mo.App.1984), the court held that an asset which had been a marital asset and was later divided in a separate equitable proceeding, brought after dissolution had been finally adjudicated, was properly valued as of the later date when the trial court finally divided the property between the parties rather than value it as of the date of divorce. No Missouri cases are found which are in conflict with that principle. Supportive of the *Sauer* decision is *Ortmann v. Ortmann*, 547 S.W.2d 226 (Mo.App.1977). In that case the trial court valued the hus-

band's interest in the marital home at $5,000.00 but allowed the wife to continue in possession of the home until the daughter was emancipated, at which time the residence was to be sold and the husband was to get $5,000.00. The trial court's order was found to be in error and the order was modified for the following reasons:

> In view of prevailing economic conditions, however, including the rising tide of inflation, the court erred in determining that upon the future sale of the residence property the husband's equity be paid him in a fixed sum or definite number of dollars. Instead, he is entitled to a percentage of the net proceeds of the sale of the residence property, after payment of all proper charges and expenses of sale.

*Ortmann*, at 230. The reasoning in *Ortmann* is as applicable to this suit in equity as it was to the court in dividing property under Chapter 452, Domestic Relations Law, particularly when the evidence here was that the property had a value, in 1977, of $22,000.00 and sold in 1989 for $38,000.00. The wife testified that the value of the real estate had increased substantially because of inflation. That testimony was not controverted by any evidence offered by the husband. The husband did claim that the increased value resulted from improvements he made, but that assertion flies in the face of his admission that he had neglected the property and that the neglect had necessitated most of the "fix-up" expenditures.

■ The court in *Sauer, supra,* reached its conclusion based upon a finding that the undivided property continued to be marital property after the divorce became final. This court does not believe it necessary to characterize the real estate as marital property, after the divorce decree is final, in order to reach the conclusion that the trial court erred in choosing the 1977 value as a basis for equitable division of the property. It has long been the law in Missouri that when title to real estate is held by husband and wife, as tenants by the entirety, upon entry of a decree of divorce, they each become owner of an undivided one-half interest in the real estate as tenants in common, *Allan v. Allan,* 364 S.W.2d 578, 582 (Mo.1963), and that either party is entitled to partition the same. *Reed v. Reed,* 516 S.W.2d 568, 570–71 (Mo.App.1974).

Cases decided since enactment of the Dissolution of Marriage Act of 1974 have reached the same result. In *Buchanan v. Graf,* 671 S.W.2d 379 (Mo.App.1984), a decree of dissolution allowed the wife to remain in the marital home until the youngest child attained the age of 18 at which time the marital home was to be sold "and the proceeds divided one half-each to petitioner and respondent after costs of sale and mortgage indebtedness has been paid." Following entry of the decree, a creditor of husband obtained a judgment, sold the husband's one-half interest in the real estate, and sought partition. The trial court dismissed the petition for lack of subject matter jurisdiction and upon appeal, the trial court's decision was reversed, with the court saying:

> We agree with the pleadings in this case that the result of the decree was to create an undivided one-half tenant in common interest in David Graf and a like interest in Marilyn K. Graf.

*Buchanan, supra,* at 382.

When the parties in this case allowed their divorce decree to become final without obtaining a division of their real estate in accord with the statutory factors in § 452.330,[2] the effect was to vest the husband with an undivided one-half interest in the real estate as a tenant in common with his wife, with either party being entitled to partition the same. *White v. Roberts,* 637 S.W.2d 332, 334 (Mo.App.1982); *Barry v. Barry,* 579 S.W.2d 136, 140 (Mo.App.1979). See also *Allan, supra; Reed, supra.* Partition would have entitled either party to the value of the property as of the time partition, or other division, was sought.[3]

---

2. References to statutes are to RSMo Supp.1975.

3. See Rules 96.19, 96.24 and 96.27. Rule references are to Missouri Rules of Court (20th ed. 1989).

No sound reason or basis can be found, either in law or equity, for dividing the real estate based upon a 1977 valuation.

Always mindful that the trial court's judgment should not be disturbed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Whitenton v. Whitenton*, 659 S.W.2d 542, 546 (Mo.App.1983), this court finds that the division of the sale proceeds from a 1989 sale of real estate, based upon 1977 values, was an erroneous declaration of the law. The trial court's division of the sale proceeds cannot stand.

█ The wife also asserts error in paragraph 6 of the trial court's judgment which reads as follows:

... Defendant as a tenant in common is not entitled to the recovery of any rental for the property from 1977 to the present date *because the decree of divorce granted custody of two children to the Plaintiff who thereafter reared and provided for said children without material assistance from the Defendant until 1986 when they changed their residence to the Defendant.* (Emphasis added).

Points IV and V of the wife's brief assert that the trial court erred as a matter of law in the finding set forth in paragraph 6 of the judgment. This court would agree, in part, with appellant's position, in that the reason given by the trial court for denying the wife any rental from the property is erroneous and cannot stand.[4]

█ The husband's petition sought equitable division of real estate not divided by the divorce decree (with the wife seeking partition of the real estate in her counterclaim). The husband's possible claim for child support was never presented in the divorce case by way of motion to modify after the entry of the divorce decree. Any alleged claim for child support was contingent and unlitigated, and was not a claim which was in any way connected with the real estate, which was the subject of the suit in equity. The power of the court to adjust equities and conflicting claims on partition is subject to the limitation that the claims must relate to the common property. 68 C.J.S. Partition § 135(b), p. 210 (1950).

While it is true that partition did not take place in this case because the parties mutually agreed to a private sale of the property a short time before trial, the same principles apply, namely, the possible claim of husband for child support was not a claim for amounts expended to preserve or improve the real estate. The possible claim for child support, even if it does exist, does not constitute a lien against the real estate in this equitable division proceeding when such possible claim has not been adjudicated and reduced to judgment by the divorce court. *Asker v. Asker*, 8 Mass.App. 634, 396 N.E.2d 704, 708 (1979). In *Richardson v. Kuhlmyer*, 250 S.W.2d 355, 360 (Mo.1952), the limitation on adjusting equities in the division of property was stated as follows:

The circuit court may exercise a wide latitude in the adjustment of equities among the parties to a partition suit.... The equities to be adjusted, however, must of necessity be those which have arisen from or are in some way connected with the real estate to be partitioned; they must be claims relating to the common property.

The possible claim of the husband for child support did not relate to the common property in this case. The wife's rent claim did arise out of, and was connected with, the property which was the subject of the lawsuit. The trial court erred in denying the wife recovery of any rental claim when the reason for denying the claim was the result of the trial court's attempt to adjust a perceived "child support equity" by balancing the same against the wife's rental claim.

---

4. The emphasized portion of paragraph 6 of the trial court's judgment is the portion which this court finds to be in error.

The reason given by the trial court in paragraph 6 of its opinion for denying the wife, as a tenant in common, recovery of any rental from the property was erroneous for these additional reasons: (a) there was no evidence that the wife owed anything to the husband for the support or "material assistance" of the children, and (b) the court having exclusive jurisdiction over the issue of child support was the divorce court. In 1977 when the marriage between husband and wife was dissolved, the trial court was authorized by § 452.340 to "order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support, without regard to marital misconduct, after considering all relevant factors...."

The record in this case is barren of any evidence about what relevant facts may have existed in 1977 that resulted in the court not ordering the wife to pay support for the children. The record is equally lacking of any evidence of changes in circumstances after entry of the 1977 divorce decree which were so substantial and continuing as would have made the original decree unreasonable. Section 452.370 authorized modification of the decree as it related to child support if the required changes in circumstances had been demonstrated to the court having jurisdiction of the divorce proceeding. *McQueen v. McQueen*, 739 S.W.2d 761, 762 (Mo.App. 1987).

■■■ The divorce court's order, as it affected distribution of marital property, was a final order not subject to modification, § 452.330, whereas, the child support order was not final and could be modified if substantial and continuing changes in circumstances were shown to the court having jurisdiction over the divorce. The final judgment dissolving the marriage of these parties did not divest the divorce court of continued jurisdiction to modify that decree as to child support. *Craighead v. Craighead*, 710 S.W.2d 501, 504 (Mo.App.1986).

It is properly stated that a final judgment in divorce or dissolution of marriage does not divest a court of continued jurisdiction to modify that decree as to maintenance, support or custody. *Burchett v. Burchett*, 572 S.W.2d 494, 497 (Mo.App.1978). *The jurisdiction retained by the court which renders domestic relations decree is exclusive as to such matters.* *Welker v. Welker*, 680 S.W.2d 282, 285 (Mo.App.1984) (emphasis added). The record does not indicate that the husband ever availed himself, in this case, of the statutory right to modify the decree and did not go back to the divorce court which had exclusive jurisdiction over modification of the decree relating to child support. For all the reasons herein stated, the trial court erred in denying wife an offset or recovery of rent from the property.

■■■ For the husband to be entitled to more than one-half of the proceeds from the sale of this real estate, his claim must be for expenditures relating to the property which were made after the parties became owners as tenants in common, that is, after the divorce. In this proceeding for equitable division, evidence concerning contribution before marriage is not germane, and the only conclusion that can be reached in this case is that the property was initially vested in the parties as tenants by the entirety to be converted to a tenancy in common by the divorce decree with an undivided one-half interest each in husband and wife. *Reed, supra,* at 570. Once the parties became tenants in common in 1977, the law in Missouri would entitle the husband to contribution from the wife for payments made for repair and improvements, taxes and other expenses, depending upon the nature and circumstances of the particular expenditures. *Hahn v. Hahn,* 297 S.W.2d 559, 567 (Mo. banc 1957); *Hartog v. Siegler,* 615 S.W.2d 632, 637 (Mo.App. 1981).

■■■ Decisions by Missouri courts hold that compensation for improvements without the consent of cotenants is a legal right, but may be enforced in equity for payment out of partition when said improvements are made in good faith, are of a necessary and substantial nature and materially enhance the value of the property.

*Brooks v. Kunz,* 637 S.W.2d 135, 140 (Mo. App.1982); *Hartog, supra; Beckham v. Eggleston,* 341 S.W.2d 337, 341 (Mo.App. 1960). Recovery under an equitable lien depends upon what is found to be just and equitable in a given case, and this has led to the general rule that "an *occupying* co-tenant may claim reimbursement for advances made for the benefit of the commonly held property; including repairs, taxes and insurance, *and* his co-tenant will be entitled to set off against such claims rents and profits for the period of his occupation. 68 C.J.S. Partition § 141; *Beckham v. Eggleston, supra." Hartog, supra,* at 637 (emphasis added).

 It is essential, in order to resolve this case, to determine what expenditures, if any, the husband made for the property while he was in possession for which he should be reimbursed, and it is equally necessary to a resolution of this case that it be determined if the wife is entitled to set off her claim for rental value of the property when she was not in possession (if there was such a time) against the husband's expenditures.

 The question of whether or not wife is entitled to recovery of any rental value is dependent upon whether or not the husband had such exclusive possession of the premises, for all or any part of the period after the divorce, as would entitle the wife to offset the fair market rental value against what the husband claims to have advanced for the benefit of the property, including repairs, taxes, insurance and mortgage payments. This follows from the long line of cases which hold that "[I]n partition equity may set off rental value against improvements and taxes and other charges paid by one in *exclusive possession,* although he has not ousted his cotenant...." *Goforth v. Ellis,* 300 S.W.2d 379, 383–84 (Mo.1957) (emphasis added). As stated in *Allen v. Allen,* 687 S.W.2d 660, 662 (Mo.App.1985) (emphasis added):

"In this state it is settled that a cotenant, who has enjoyed the occupancy of the premises, who seeks and is to be granted an allowance for improvements made thereon subjects himself to the crediting of his out-of-possession cotenant with the reasonable value of the premises he occupied, and, in partition *equity may set off that rental value* against the improvements, taxes *and other charges* paid by the tenant in exclusive possession although he has not ousted his cotenant. *Goforth v. Ellis, supra* [300 S.W.2d 379] 300 S.W.2d loc. cit. 379(6); *Byrne v. Byrne,* 289 Mo. 109, 233 S.W. 461; *Martin v. Martin,* 218 Mo.App. 617, 266 S.W. 336...."

See also *Hartog, supra* at 637; *Beckham, supra,* at 340.

 In this case, there was evidence from which the trial court could have found that the husband had exclusive possession of the real estate for some part of the time period after the divorce. Upon such finding being made, the trial court could have set off the wife's share of the rental value against the improvements, taxes, and mortgage payments claimed by the husband to have been made by him after the divorce. The trial court failed to make any finding concerning the nature of the possession of the husband, i.e., failed to find whether his possession was exclusive for any period of time. Reversal of the trial court's decision and remand for new trial in keeping with the principles noted above is an option.

 However, in the interest of laying litigation to rest, Rule 84.14 permits the appellate court to give judgment or award as the trial court ought to have given in the situation. *Oldfield v. Oldfield,* 688 S.W.2d 778, 781 (Mo.App.1985); *Steinmeyer v. Steinmeyer,* 669 S.W.2d 65, 68 (Mo.App. 1984). An appellate court should not do so absent a record and evidence upon which that function can be performed with some degree of confidence in the reasonableness, fairness and accuracy of the conclusion reached. *In re Marriage of Parker,* 762 S.W.2d 506, 514 (Mo.App.1988). Despite the absence of finding by the trial court concerning post-divorce possession of the real estate, there is evidence on the issue. Husband claimed to have had exclusive possession (which would entitle this court to offset wife's claim for rental value

against husband's claim for improvements and mortgage payments). *Goforth, supra,* at 383–84; *Allen, supra,* at 662; *Hartog, supra,* at 340.

The wife's claim that she lived in the house "off and on" for one and one-half years after the divorce would disentitle her to claim rent for the one and one-half year period when she had partial use of the same. The record is not clear as to when, by the wife's version, she lived in the house. Accordingly, this court will use the lower of the rental values ($200.00 per month) to determine the amount available, and which may be used by the court as an offset, for the wife against the claims of the husband. Deducting 18 months (wife's acknowledged occupancy after divorce) from 147 months (total period from divorce, February 1977, until the house sold, April 1989,) leaves 129 months during which husband had exclusive possession. The court finds that for 129 months there is available the sum of $12,900.00 (representing one-half of rental value) which the court may use as an offset for the wife against the claims made by the husband.

The total expenditure claimed by the husband was $21,500.35, of which $15,184.00 was mortgage payments made after the divorce, and $6,316.35 was repairs, improvements and fix-up expenses.[5] Some of the fix-up expenses were made necessary by the husband's neglect, but the air conditioner ($1,690.22); shingles for the roof ($460.24); and carpet replacement ($2,138.36) were major improvements made near the time of sale which would have added to the fair market value. The total cost of the enumerated major improvements was $4,288.82. The husband is entitled to repayment from the wife for one-half of the cost of the major improvements, or a total of $2,144.41 to be paid to husband out of wife's one-half of the real estate sale proceeds. The wife is entitled to credit her claim for rental ($12,900.00) against the remainder of the husband's claim ($7,592.00, being one-half of mortgage payments and $1,013.76, being one-

half of the repairs after deduction for major improvements). See *Gearhart v. Gearhart,* 213 S.W. 31, 33 (Mo.1919). See also 86 C.J.S. Tenancy in Common § 67, p. 445 (1954). In conclusion, the one-half of the real estate sale proceeds which has not been disbursed shall be divided as follows: The husband shall be entitled to $2,144.41 and the wife shall be entitled to $10,539.76.

The judgment of the trial judge is reversed. The matter is remanded with direction to enter a judgment in accord with this opinion.

HOGAN, C.J., and FLANIGAN, P.J., concur.

---

5. These were total expenditures by the husband. Clearly, it was one-half of the expenditures which the husband sought to charge to the wife.