**Wayne O. HOPKINS,
Plaintiff-Respondent,**

v.

**Junita A. HOPKINS,
Defendant-Appellant.**

No. 40114.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 30, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 14, 1979.

Sleater & Sleater, W. W. Sleater, M. C. Sleater, Clayton, for defendant-appellant.

Ruppert & Westhus, Francis L. Ruppert, Clayton, for plaintiff-respondent.

GUNN, Presiding Judge.

This case involves consolidated appeals from two orders entered in successive divorce modification proceedings. The matrimonial ligatures were riven in 1969, the respondent-husband being ordered to pay $400 per month maintenance to the appellant-wife.[1] The division of property was accomplished by means of a stipulation agreement filed at the time of the divorce. Subsequently, the husband experienced an extended period of unemployment while the wife's health deteriorated considerably, and both parties filed motions to modify the original decree in their respective favor. After hearing on the first set of cross-motions, the trial court entered an order on November 28, 1977, refusing to modify the maintenance award altogether. The court also made permanent an earlier temporary restraining order prohibiting the wife from circulating copies of certain discovery documents filed with the court to which she had added certain handwritten annotations reflecting adversely on the husband. She was also awarded attorney's fees in the sum of $1,500 out of a total claim of over $7,600. The wife appealed from this order.

Subsequently, the husband also experienced certain serious health difficulties and maintains that he has become totally and permanently disabled. He filed another motion to modify, to which the wife responded with a motion of her own. By its order following hearing on both motions, the court reduced the husband's maintenance payment obligation from $400 to $350 per month, refusing the relief sought by the wife, and she again appealed. On motion to this court, the appeals were consolidated. For the reasons set out below, we affirm.

▇▇▇▇ In her first point attacking the original modification order, the wife maintains the court erred in making permanent its temporary order restraining her from distributing to any persons copies of the husband's answers to interrogatories filed with the court and on which she had hand-

written certain comments of her own. The substance of her editorializing was to suggest that some of the assets and expenses identified in the husband's answers were in reality related to, *inter alia*, a mistress, a bookie and misuse of his employer's funds. A copy of these answers, complete with wife's emendations, was sent to the husband with the comment that there would be a wholesale distribution of them. It was also suggested that the husband contact the wife to be spared further embarrassment.

The wife contends the trial court impermissibly abridged her first amendment rights in restraining her from distributing the husband's answers to interrogatories. Although she correctly points out that, in general, "injunction . . . will not lie to restrain the threatened publication of either a libel or a slander," citing *Wolf v. Harris*, 267 Mo. 405, 184 S.W. 1139, 1141 (1916), the wife misperceives the actual issue involved. This precise question was addressed in *Parker v. Columbia Broadcasting System, Inc.*, 320 F.2d 937 (2nd Cir. 1963), where the plaintiff in a shareholders suit to set aside the results of a stockholders meeting had been enjoined by a lower court from "in any way publishing, disseminating, publicizing or otherwise promulgating" a certain unsworn memorandum filed by plaintiff alleging fraud and misconduct by some defendants. The plaintiff had also been enjoined from communicating with other persons with respect to "any of the matters contained" in that document. Although it struck the latter provision of the injunction as repugnant to the first amendment, the court upheld the former on the basis of the "inherent 'equitable powers of courts of law over their own process to prevent abuses, oppression, and injustice'," *id.* at 938. The instant case involves no attempt to prevent wife from communicating whatever accusations she cares to make in any way or by any media other than that involving the court's own process. We accept as a proper statement of law the pro-

---

1. The parties have been subject to several different appellations as these proceedings have progressed through the various stages below, and for simplicity, will be referred to here in their original roles as husband and wife.

nouncement in *International Products Corp. v. Koons*, 325 F.2d 403 (2nd Cir. 1963), that "we entertain no doubt as to the constitutionality of a rule allowing a . . . court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes," *id.* at 407. The trial court had the right to restrain the wife from the commission of an affront to its dignity and integrity through misuse of its process in attempting to exact a favorable settlement of pending litigation.

 In her second point addressed to the original modification order, the wife insists that the trial court erred in failing to order an increase in alimony as requested. Original determinations as to reasonable need and support levels in dissolution proceedings are, of course, *res judicata*, thereby requiring a modification movant to carry the burden of showing a continuing and substantial change in circumstances of the parties since the dissolution if he or she is to prevail. § 452.370, RSMo 1978; *Ziebell v. McClure*, 578 S.W.2d 66 (Mo.App.1979). It should be manifest that in order to establish the fact of the requisite change in circumstances a party seeking a modification must somehow inform the court of the circumstances obtained at the time of dissolution. The concept of "change" necessarily entails a departure from a known prior state or condition. In the instant case, the record before us is virtually devoid of any indication of the respective resources and needs of the parties at the time of the dissolution. The only meaningful information to be gleaned from the financial minutiae adduced throughout the record is that the husband earned from his employment at the time of the hearing about $100 per month more than he made at the time of the dissolution; that he had an extensive period of unemployment in the interim; that he was originally ordered to pay wife $400 per month alimony; that she was gainfully employed until shortly before the modification hearing; and that she had experienced a great deal of health-related difficulties (albeit that by no means established that she was unemployable as a result of those diffi-

culties). Both parties submitted financial and income/expense statements current at the time of the hearing, providing a basis for determining current levels of need and resources for each party. The wife's resources and needs and the husband's reasonable needs at the time of the divorce remain obscure. The $400 monthly maintenance figure provides no assistance, as that may represent an accommodation between a reasonable level of need of the wife and a lesser ability of the husband to pay as well as reflect a determination as to the culpability of one of the parties in causing the demise of the marriage. It is clear that something more than an increase in the income of the husband must ordinarily be shown to justify a dissolution decree modification. *Plattner v. Plattner*, 567 S.W.2d 139 (Mo.App.1978). In the absence of additional evidence of net changes in resources or needs of the wife, the trial court was not in error in refusing to alter the decree, and we decline to disturb its determination accordingly.

 In her final point attacking the first modification order, the wife insists the trial court abused its discretion in allowing only $1,500 in attorney's fees for representation in the modification proceedings, asserting that the court should have allowed fees for representation in execution and temporary restraining order proceedings, totalling in the aggregate $7,698. At the hearing, the wife's counsel testified to having spent 128.3 hours (at $60 per hour) total representing the wife in the modification proceedings and the related execution and restraining order matters.

The execution and restraining order issues were treated in the course of the modification proceedings. There is nothing in the record to indicate that the trial court excluded representation on those issues in its computation and award of fees for the "motions to modify". Regarding its computation and award of $1,500 in total fees, we note that appellate courts will not interfere with awards of attorney's fees in dissolution proceedings absent a clear showing of

abuse. *In re Marriage of Frankel*, 550 S.W.2d 896 (Mo.App.1977). In computing fee awards, trial courts are not bound by counsel's testimony as to the value of services rendered, and, being themselves experts on the issue of attorney's fees, courts need have no evidence adduced on the subject to enable them to fix an award in the first instance. *LoPiccolo v. LoPiccolo*, 581 S.W.2d 421 (Mo.App.1979). After reviewing the record of the proceedings below and in light of § 452.355, RSMo 1978, directing the court to consider "all relevant factors" in fixing awards of attorney's fees, we find no abuse of discretion in the $1,500 award ordered.

We now address the points raised in the appeal from the second modification order. The wife argues that the trial court erred in both ordering a reduction in alimony and in failing to order the increase as requested by her. Our finding that the reduction in maintenance is fully supported by substantial evidence is dispositive of both points.

■■■■ The period of time to which we refer for the necessary changes in circumstances to support the modification in maintenance dates from the prior order refusing modification, dated November 28, 1977. Consideration of evidence predating that order is precluded. *Farnsworth v. Farnsworth*, 553 S.W.2d 485 (Mo.App.1977). It terminated with the hearing on the motions to modify now in question which was held July 18, 1978. A thorough recapitulation of all the evidence presented by the parties would be tedious, of no real edification or precedential value. It is sufficient to note that from the evidence adduced the trial court could have found that during the period in question the wife remained unemployed but was capable of some form of non-demanding employment; that the husband became totally unemployed and was diagnosed as suffering from a heart condition and other health difficulties rendering him permanently disabled; and that both parties were possessed of assets both real and personal, with the wife's assets having increased slightly in value during the period. This was sufficient to carry the husband's burden of demonstrating a substantial and continuing change in circumstances under § 452.370, and *Seelig v. Seelig*, 540 S.W.2d 142 (Mo.App.1976), thereby supporting the reduction in maintenance from $400 to $350 per month. This conclusion necessarily forecloses any consideration of the wife's claim of error in failing to order an increase in maintenance.

■■■■ Finally, the wife raises the question of trial court error in failing to order specific performance by the husband of certain provisions of the stipulation agreement entered into by the parties at the time of their divorce touching insurance policies the husband was to maintain for the wife's benefit. The original divorce decree acknowledges the fact that the stipulation was filed with the trial court but does not incorporate the agreement into the decree nor order the performance of its provisions.

The husband contends that under *Vorhof v. Vorhof*, 532 S.W.2d 830 (Mo.App.1975), a stipulation as to maintenance and property rights not forming a part of the "divorce" decree is a matter of private agreement enforceable only by separate suit on a contract. And, indeed, that contention is correct for a divorce prior to the Dissolution of Marriage Act, Laws of 1973, p. 470, § 452.-300, et seq., RSMo 1978, effective January 1, 1974. *Haggard v. Haggard*, 585 S.W.2d 480 (Mo. banc 1979); *North v. North.* 339 Mo. 1226, 100 S.W.2d 582 (Mo.1936); *Nelson v. Nelson*, 516 S.W.2d 574 (Mo.App.1974). For dissolutions of marriage occurring after the effective date of the Dissolution of Marriage Act, the terms of separate maintenance agreements, unless unconscionable, are decretal to be incorporated within the decree, unless the agreement expressly provides otherwise. *Haggard v. Haggard,* supra. The property settlement stipulation in this case was executed November 4, 1969. The divorce decree, without incorporation or reference to the stipulation other than to note it was filed, was entered November 5,

1969.[2] Hence, the provisions of the stipulation, including those regarding insurance premiums, were contractual, not decretal. *Whitworth v. Whitworth*, 559 S.W.2d 292 (Mo.App.1977). They are enforceable by separate contract action not ancillary to the divorce proceeding and not enforceable as a judgment under § 452.325.5, RSMo 1978. *Nelson v. Nelson*, supra.

The judgment of the trial court concerning the modification orders of November 11, 1977 and August 10, 1978 is affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.

---

2. The divorce was granted and stipulation executed under the provisions of § 452.010, et seq. RSMo 1969.