**In re The Marriage of Joanne ORTH, Petitioner-Respondent,**

v.

**Robert L. ORTH, Respondent-Appellant.**

**Joanne ORTH, Petitioner-Appellant,**

v.

**Robert L. ORTH, Respondent-Respondent.**

**Nos. 42753, 42797 and 42903.**

Missouri Court of Appeals, Eastern District, Division One.

June 8, 1982.

Motion for Rehearing and/or Transfer Denied July 16, 1982.

Application to Transfer Denied Sept. 13, 1982.

David C. Godfrey, Clayton, for respondent-appellant Robert L. Orth.

Joel F. Graziani, Clayton, for petitioner-respondent Joanne Orth.

STEPHAN, Presiding Judge.

Husband and wife both appeal from an order modifying their dissolution decree. The appeals have been consolidated.

The dissolution decree, entered in 1973, provided that husband pay $200 per month for the support of each of two daughters who were in wife's custody. Husband was also to maintain medical insurance coverage on the daughters. Wife was awarded $1,050 per month in maintenance. In a "Stipulation and Property Settlement," husband agreed to provide wife with $50 per month with which to pay the premium for an insurance policy on his life.

At the time of trial on the modification matters, husband had remarried, and this second marriage had produced no offspring. Wife had not remarried. The elder daughter, Lori Lynn, had married in 1974, and therefore child support payments for her had ceased at that time. In 1978, husband stopped paying child support for the younger daughter, Linda Ann, who at that time was residing out of state, away from her mother's home in St. Louis.

The trial court expressly found that husband's income for 1978, the last complete year before trial, was $120,000. Wife asserts in her brief that husband's net assets according to the evidence at the hearing amount to nearly $900,000; husband does not contradict this assertion. Our review of the record indicates that prior to trial husband's personal assets amounted to over $400,000. Husband also owned all the outstanding shares of two corporations, whose combined total assets were in excess of $400,000. The trial court found that at the time of the hearing wife's assets amounted to about $18,000 plus "household furniture of minimal value."

Husband's motion to modify requested a termination of maintenance payments to wife and a termination of his child support obligations. Husband urged as grounds for termination of child support that Lori Lynn

was no longer a minor and that Linda Ann was emancipated. He urged as grounds for termination of maintenance the view that maintenance was awarded to wife in 1973 under statutes that used alimony as a means to redress injury and to punish whichever party was deemed to have breached the marriage contract. Husband argued that the trial court should modify the award based on contemporary statutory standards for determining maintenance, which standards focus on the ability of the party seeking maintenance to support herself.

Wife, in a counter-motion to modify, sought to have her maintenance award increased to $1,500 per month.[1] She alleged "substantial changes in ... circumstances," including: increased financial need and increased cost of living; failure of husband to pay $50 per month to her for life insurance premiums as ordered; increase in husband's wealth. Wife also asked for costs and attorney's fees.

The trial court heard evidence on these motions to modify, and issued findings of fact and conclusions of law as requested by wife's counsel. The trial court found that the elder daughter, Lori Lynn, was emancipated; that the younger daughter Linda Ann "is not self-supporting" and "is not emancipated." The court therefore overruled husband's motion to modify except as to his request to be formally released from the obligation to support the married daughter. The trial court sustained wife's motion in part, increasing the maintenance award to $1,250 per month and ordering husband to pay $4,500 for attorney's fees incurred by wife in the modification actions.

Both parties appealed from this result. Wife filed a "Motion for Attorney's Fees and Suit Monies on Appeal on Account," which was denied.

---

1. Wife argues on appeal that the award should have been increased to $1,700 per month, which is the total of the monthly expenses to which she testified at the hearing. There is nothing in the record to show that her counter-motion to modify was amended to reflect the higher request.

In the first of her "Points Relied On" as respondent on appeal, wife asks that husband's brief be stricken for failure to comply with Rule 84.04. Specifically, wife argues that husband's statement of the facts contains inaccuracies, misstatements, or incomplete assertions, in violation of Rule 84.04(c). Secondly, she maintains that husband's "Points Relied On" violate Rule 84.04(d) because they do not state wherein and why the actions of the trial court are claimed to be erroneous.

We do not find husband's statement of the facts to be misleading or unfair in violation of Rule 84.04(c). As for the "Points Relied On," we note that several technically violate Rule 84.04(d). The defects in question, however, are not such an impediment to understanding and resolving the issues on appeal that we would invoke the extreme remedy of striking husband's brief. See *Norman v. Ballentine*, 627 S.W.2d 83, 85 (Mo.App.1981); *Interstate Motor Freight System v. Wright Brokerage Co.*, 539 S.W.2d 764, 766[1] (Mo.App.1976); *Gooch v. Spradling*, 523 S.W.2d 861, 862–863[1] (Mo.App.1975).

We turn now to the substantive issues raised by both parties on appeal. We find it expedient to address first the issue of Linda Ann Orth's emancipation. The trial court made the following findings pertinent to this issue:

"... Respondent has not paid child support to Petitioner for the support of Linda Ann Orth since August, 1978. He has not provided medical, health and hospitalization coverage since August, 1978.

... The minor child, Linda Ann Orth, is not self-supporting.

\* \* \* \* \* \*

The Court finds that the minor child of the parties, Linda Ann Orth, is not emancipated."

Husband contends that the trial court erred in finding that Linda Ann was not emancipated. He argues that Linda Ann was emancipated as of August 1978 because she left her mother's home, with the intention of permanently removing herself from the custody and control of her mother, and became self-supporting. We uphold the trial court's order on this question.

The record reflects that Linda Ann Orth was born on March 3, 1959. She was twenty years old at the time this matter was heard below. Linda Ann attended Fontbonne College in St. Louis in 1977 and 1978. She lived on campus during the week and returned to her mother's townhouse apartment on weekends. In August 1978, at the age of nineteen, she went to Texas. In Texas, Linda shared a house with a person whom wife, in a deposition taken in January 1979, characterized as Linda's "boyfriend." At the hearing in November 1979, husband characterized this person as Linda's "fiance." Others lived in the house as well. While in Texas, Linda first worked for an unspecified length of time selling clothing. In November of 1978, she took a job at an oil company and remained employed there until August of 1979. Linda attended a community college in Texas during the fall semester of 1978. In 1979, she attended night school.

Linda returned to St. Louis for a week to ten days in April 1979, residing part of the time with each parent. She then went back to Texas. In September 1979, having left her job at the oil company, Linda came to St. Louis and was employed by husband in his business. Husband is a manufacturer's representative in the florist industry. While in St. Louis for over two months, Linda lived at her father's apartment. She spent the night at her mother's "a couple of times." In mid-November of 1979, just prior to trial in this matter, Linda returned to Texas and went to work for a retail florist.

In August 1978, when Linda first went to Texas, husband stopped making the $200 monthly payments to wife for Linda's support as required under the decree of dissolution. From that time until May of 1979, husband made payments directly to Linda of about $200 monthly. He also "paid for college" and furnished her with a car. He stated at trial that he had provided this assistance "because she was having a hard time getting on her feet financially."

Linda Ann Orth was nineteen years of age when husband stopped making child support payments to wife for Linda's benefit. Although the age of majority is, for most purposes, eighteen in Missouri, for child support the age of majority is twenty-one. *Bushell v. Shepp*, 613 S.W.2d 689, 691[2] (Mo.App.1981); *Biermann v. Biermann*, 584 S.W.2d 106, 107 (Mo.App.1979). The emancipation of an offspring under twenty-one in Missouri may occur in three ways. The first is by express parental consent. The second is by implied parental consent. *Black v. Cole*, 626 S.W.2d 397, 398[3] (Mo.App.1981); *Biermann v. Biermann*, 584 S.W.2d 106, 108[5] (Mo.App. 1979); *Specking v. Specking*, 528 S.W.2d 448, 451 (Mo.App.1975); *Brosius v. Barker*, 154 Mo.App. 657, 136 S.W. 18, 19 (1911). The third method of emancipation concerns a child's change of status in the eyes of society and has less to do with parental consent. When an offspring under twenty-one marries or enters military service (the two most common instances of this type of emancipation), he is thought to have a "status, or position, inconsistent with remaining subject to parental control." *Rapplean v. Patterson*, 631 S.W.2d 693 (Mo.App.E.D. 1982); *French v. French*, 599 S.W.2d 40, 41 (Mo.App.1980).

Emancipation by parental consent, whether express or implied, can only occur when the child is old enough to take care of and provide for himself. See *Brosius*, supra, 136 S.W. 20. Assuming that the child has the *potential* to support himself, the child is impliedly emancipated "where the parent, without any express agreement [,] by his acts or conduct, impliedly consents that his infant child may leave home and shift for himself." *Brosius*, supra, 136 S.W. 20, quoted in *Biermann*, supra, 108. Courts are inclined to find implied consent when the child is regularly employed with sufficient income to support himself, and is allowed by the parents to keep his own earnings, *Black v. Cole*, supra, 398, to which parents are entitled by law during a child's minority. *Mitchell v. Mosher*, 362 S.W.2d 532, 536–537 (Mo.1962). In a recent decision this court wrote that emancipation by

the parents could be inferred from "parental acquiesence in the child's working for others, receiving its pay therefor, and spending the money as it pleases." *Rapplean v. Patterson*, supra.

Under Missouri law, the custodial parent in a split family may emancipate the child. *Specking v. Specking*, supra, 451; *Biermann*, supra, 108. In this case, wife did not give express consent to the emancipation of Linda. Nor did Linda change her status in society in a way that made parental control seem incongruous, such as by marrying or joining the military. Therefore, it remains for us to inquire whether there was implied parental consent to her emancipation.

The trial court apparently based its conclusion that Linda Ann was not emancipated on its finding that the girl was not "self-supporting." Husband's own testimony was that his daughter was having a "hard time getting on her feet financially," prompting him to continue to send her money. Nothing in the record suggests that she "got on her feet" or was, in the language of *Brosius*, supra, able to "shift for herself," during the time that this litigation is concerned with. The record paints a picture of a girl under twenty-one relying heavily on her parents, financially and otherwise. The record also paints a picture of a young woman who left her home to live with friends, who did not need her parents' help to survive but accepted their generosity and their offer of a place to stay when she came to visit. Which of these two pictures is the more accurate was for the trial court. Each has a basis in the record. See *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Royall v. Legislation & Policy Division*, 610 S.W.2d 377, 379 (Mo.App.1980). We rule against husband on this point.

Husband asked the court below to eliminate his maintenance obligation of $1,050 a month under the original decree. The trial court declined to do so. Husband apparently failed to make a "showing of changed circumstances" warranting a reduction in maintenance, as required under § 452.370.1,

RSMo 1978. Nothing in the record suggests that we should disturb this conclusion. See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Kirk v. Kirk*, 598 S.W.2d 153, 156 (Mo.App.1980). Husband is therefore incorrect in his argument that the trial court should have applied the criteria in § 452.335, RSMo 1978, to determine maintenance anew. *Crews v. Crews*, 607 S.W.2d 709, 711 (Mo.App.1980). See also *Doss v. Doss*, 625 S.W.2d 637, 639 (Mo.App.1981); *LoPiccolo v. LoPiccolo*, 581 S.W.2d 421, 424, 424 n. 2[5] (Mo.App.1979).

Wife asked the court below to increase her monthly maintenance award to $1,500 from $1,050.[2] The court increased the award to $1,250 per month. In arguing that the trial court abused its discretion in not awarding her a larger increase, wife places heavy emphasis on the marked increase in husband's income and assets since the dissolution. A spouse's additional wealth is not on its own sufficient basis for increasing maintenance. *Mitchell v. Mitchell*, 610 S.W.2d 390, 391[1] (Mo.App.1980); *Rincon v. Rincon*, 571 S.W.2d 475, 476[5] (Mo.App.1978). Wife made a showing of changed circumstances. The trial court had before it ample evidence of her financial needs and husband's financial status; it was free to weigh this evidence assessing credibility according to its own lights. See *Doss v. Doss*, supra. We find no abuse of discretion presented by these facts.

Husband urges that the trial court abused its discretion in awarding to wife the sum of $4,500 in attorney's fees incurred in defending husband's motion to modify and in prosecuting her own. Wife's counsel testified at trial that the value of his legal services up to that point was $3,330.50. The trial court specifically found that additional legal services were rendered during and after trial.

Section 452.355, RSMo 1978, provides that the trial court

"from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under [the Dissolution of Marriage statutes] and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment."

The trial court has broad discretion in deciding whether to make such an award and what amount is to be paid. *In Re Marriage of Hays*, 594 S.W.2d 369, 371[4] (Mo.App. 1980); *Forsythe v. Forsythe*, 591 S.W.2d 222, 223[4] (Mo.App.1979). Although wife in this case had assets sufficient to cover the attorney's fees incurred in the proceedings below, the trial court did not abuse its discretion in ordering husband to bear the cost. The record indicates that husband is able to pay without substantially encroaching on his assets; wife should not be required to strip herself of a substantial portion of her property to litigate her claims, which in light of the record were not frivolous. See *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501, 506 (Mo.App.1977); *Ortmann v. Ortmann*, 547 S.W.2d 226, 231 (Mo.App. 1977); *In Re Marriage of Leonard*, 538 S.W.2d 736, 737 (Mo.App.1976). The particular amount awarded in this case was supported by the evidence. Trial courts are themselves experts on the issue of attorney's fees. *Hopkins v. Hopkins*, 591 S.W.2d 716, 720 (Mo.App.1979); *Beckman v. Beckman*, 545 S.W.2d 300, 303[9] (Mo.App.1976).

Wife's Motion for Attorney's Fees and Suit Monies on Appeal on Account was heard on April 11, 1980, thirty-one days after the trial court overruled her motion for new trial. On April 24, 1980 the trial court overruled wife's motion for appellate fees. At that time, the trial court had jurisdiction to modify the decree and award these additional fees, or portions thereof, to wife, *Brucker v. Brucker*, 607 S.W.2d 444 (Mo.App.1980), but chose not to do so. In so ruling, the trial court abused its discretion.

---

2. See note 1 supra.

Wife asked the trial court for the sum of $3,300 "for attorney's fees on Appeal on account" and for the sum of $750 "for suit monies on Appeal on account." The trial court ordered husband to pay the $4,500 for fees incurred through the hearing presumably because the court believed that wife did not have sufficient means to defend and prosecute on her own, see *Ortmann v. Ortmann*, supra, at 231, and that husband had sufficient means to pay for her, see *Larison v. Larison*, 524 S.W.2d 159, 161 (Mo.App. 1975). The trial court reached an inconsistent result in failing to provide for wife's expenses on appeal when faced with the question several months later; nothing was before the trial court to indicate that the parties' circumstances had changed.

We note that husband was the first to appeal in this matter, so that wife would have been obliged to incur considerable expense after trial whether or not she prosecuted an appeal. In light of these facts and the reasoning set out above, we remand to the trial court for further proceedings on the issue of wife's attorney's fees and suit monies on appeal. The court may take into account the financial history of the parties since the modification of the decree in January of 1980. We instruct the court to make an award to wife consistent both with its determination of the issue of trial fees and with the principles set out in this opinion.

Affirmed in part; reversed in part and remanded with instructions.

DOWD and STEWART, JJ., concur.