**Floyd Lee WOOD, Petitioner-Appellant,**

v.

**Mary Ann WOOD, Respondent.**

**No. 14127.**

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 1986.

dren (subject to Floyd's right to reasonable visitation), child support, alimony, attorney fees and costs. Floyd married his present wife October 1, 1973.

At Floyd's bidding, the court reduced Mary Ann's alimony to $550 per month on July 9, 1976. In Floyd's third proceeding instituted March 13, 1984, he moved the court to modify the decree as to alimony and to award him custody of his 16-year-old son, John, for a period of the summer school vacation and during the Christmas holiday. (The other two children were then over 21 years of age and emancipated.) In response, Mary Ann moved the court to hold Floyd in contempt for nonpayment of child support and alimony. She also cross-claimed seeking an increase in maintenance and child support payments, together with recovery of attorney fees and costs. After trial the court entered judgment which denied Floyd's motion to modify in toto and which (1) denied Mary Ann's motion to hold Floyd in contempt, (2) denied Mary Ann's request to increase her maintenance award, (3) increased Floyd's child support payments for John to $200 per month, (4) awarded Mary Ann $500 in attorney fees and (5) taxed Floyd with the cost of the action. Floyd appealed.

Floyd complains on appeal the court nisi erred in failing to modify the child visitation provisions of the decree by refusing to give him "visitation rights to [son John] during the summer months during" Floyd's vacation. Floyd argues that since the "original decree in 1973" he has "moved his residence from Springfield ... to Kansas City ... and made the exercise of week-end visitation impractical." This ignores the undisputed fact that Floyd, during the 10 odd years that intervened from a period shortly after the divorce to the date of the institution of the present action, has not once seen or visited with John and has but seldom, if ever, corresponded with him. We, nor obviously the trial court, cannot conceive of a situation where a father has more completely forfeited his association rights with his child. This is augmented with the fact that Floyd from time to time visited in Springfield with his mother and

Bob J. Keeter, Keeter, Karchmer, Nelms, Kirby & Johnson, Springfield, for petitioner-appellant.

Wallace N. Springer, Jr., Springer & Haseltine, Springfield, for respondent.

TITUS, Presiding Judge.

Mary Ann gave birth to three children during her 21 years of marriage to Floyd before he sued for divorce in the Circuit Court of Greene County. The court awarded Mary Ann the divorce August 30, 1973, together with care and custody of the chil-

siblings, yet has never undertaken to see or communicate with his son while present in the city. During the court's in camera examination of John, the latter was asked "have you given any consideration to the possibility of becoming better acquainted with your father?" John answered: "Yes, and I have no desire to.... He has made no effort to make contact and get to know me at all in the eleven years. I think if he wanted to know me he could have. I have no desire to see him in the summer or over Christmas."

■ Deference should be given to the trial court's assessment of what best serves the interest of the child in matters pertaining to visitation rights. The trial court is vested with considerable discretion in deciding this question and if its decision is supported by substantial evidence it will be affirmed. *Vaughan v. Merritt*, 672 S.W.2d 187, 188 (Mo.App.1984). Here the court's ruling is supported by substantial evidence and is affirmed.

■ Floyd also claims the court nisi erred in restricting his counsel in cross-examining John when the latter was interviewed by the judge in chambers in accordance with § 452.385.[1] Albeit the statute provides the "court shall permit counsel to be present at the interview and to participate therein," this did not give Floyd's counsel carte blanche or full freedom and authority to question John on any and all subjects or at any and all lengths. The questioning of John by Floyd's lawyer apparently undertook, but without the slightest success, to elicit from John it was his mother's fault that he had not been contacted by his father. When the court indicated to counsel "I don't believe I want you to pursue that line any further," Floyd's counsel did not object. And after Mary Ann's lawyer and the court again interrogated John, the court inquired "[D]o either of you have any specific questions?", Floyd's attorney answered "No." An objection to the exclusion of testimony, which

we take Floyd's present objection to be, cannot be considered on appeal in the absence of a showing of what the testimony would have been and that it was relevant and mattered. *Weinbaum v. Weinbaum*, 679 S.W.2d 384, 389 (Mo.App.1984). Also, as above noted, Floyd's lawyer, without objection, dropped the subject and did not pursue it further after the court expressed the view it wanted to hear nothing more of the matter. *Provident Life and Acc. Ins. Co. v. Buerge*, 703 S.W.2d 590, 594 (Mo. App.1986). Furthermore, we cannot determine if Floyd was prejudiced by the ruling when he made no offer of proof which sufficiently demonstrated the relevancy of the unknown testimony. *Murphy v. Grisham*, 625 S.W.2d 215, 217 (Mo.App.1981). The point is denied.

■ Floyd complains of the court's refusal to terminate or reduce the $550 per month maintenance awarded to Mary Ann when the original 1973 divorce decree was amended in 1976. He initially implies the new Dissolution of Marriage statutes (§ 452.300 et seq.) created a different atmosphere for viewing maintenance and points to the requirements of § 452.335. Floyd alternatively contends maintenance should end if Mary Ann has obtained sufficient training and education so as to be self-supporting.

When the maintenance award was reduced to $550 per month in 1976, Floyd was earning $22,500 per year and Mary Ann was earning less than $200 per month as a kindergarten aide. After the 1976 modification, Mary Ann's annual salary as a teacher was increased to about $14,000 because of her efforts in attending night school and in securing a college degree. In the same period, Floyd's earnings were increased to about $53,000 per year, or more than double his income in 1976.

We believe Floyd's initial complaint is answered in *Crews v. Crews*, 607 S.W.2d 709, 711[1][2] (Mo.App.1980) where it is

---

1. Unless otherwise stated all references to statutes are to RSMo 1978 and all rule references are to Missouri Rules of Court, V.A.M.R.

said, inter alia: "Under § 452.370, RSMo 1978, the court may modify a maintenance decree 'only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.' ... Section 452.415(3), RSMo 1978 makes the new dissolution act, including section 452.370, applicable to proceedings to modify judgments entered prior to January 1, 1974. Therefore, section 452.370 RSMo 1978 governs the disposition of the motion to modify, not the factors governing an award of maintenance under the new act, enumerated in section 452.335, RSMo 1978." Also see *Orth v. Orth,* 637 S.W.2d 201, 206 (Mo.App.1982), where the initial dissolution decree, as here, was entered in 1973 and the court stated: "Husband is therefore incorrect in his argument that the trial court should have applied the criteria in § 452.335, RSMo 1978, to determine maintenance anew."

■ As to Floyd's alternative contention that maintenance should end because Mary Ann has obtained sufficient education and training to be self-supporting, we again note that under § 452.370, RSMo Cum. Supp.1984, modification of maintenance is justified "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." In deciding this contention we bear in mind we must affirm the judgment in this court-tried case unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976); Rule 73.01(c)(1). Also, where conflict in evidence appears, this court upon appeal is bound to accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard all contrary evidence because the court nisi has the prerogative to determine the credibility of the witnesses and to accept or reject all, part or none of the testimony of any witness. *In re Marriage of Plank,* 670 S.W.2d 185, 189[3, 4] (Mo.App.1984); *Cockrum v. Cockrum,* 550 S.W.2d 202, 205[2] (Mo.App.1977); Rule 73.01(c)(2).

■ Without belaboring this opinion with details of income, expenses, etc. of the parties, based upon Mary Ann's testimony concerning the same, which the court nisi had leave to believe, her net income from all sources, including the $550 monthly maintenance payment, was $1,544.72. This left her with a deficit when compared to her regular monthly expenses of $1,874.24, not counting the monthly cost of $414 for the support of her son John for which she received but $200 a month. When these figures are viewed in conjunction with the ever increasing effects of inflation [*Smolly v. Hoffman,* 458 S.W.2d 579, 581 (Mo.App. 1970)], we cannot hold, contrary to the trial court's obvious belief, that Floyd has met his burden of showing substantial and continuing changed circumstance existent so as to make the current award of maintenance unreasonable. The point is denied.

■ In his penultimate point Floyd says the court nisi erred in admitting an unauthenticated document offered by Mary Ann "taken from the records or publications of the Bureau of Labor", showing the increase in the yearly cost of living. Albeit Floyd's counsel, when objecting, admitted "the court knows and could take judicial notice the cost of living has increased," his objection to the exhibit was limited to the pronouncement that it "was not authenticated in any way." Rule 84.13(b) admonishes: "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." *Williams v. Venture Stores, Inc.,* 673 S.W.2d 480, 483[4] (Mo.App.1984). Floyd neither claims nor has he undertaken to demonstrate how the admission of the exhibit materially affects the merits of the action. Consequently, if there was error in the admission of the exhibit, which we needn't decide, it was harmless and the point is denied.

■ Finally Floyd complains of the court's award to Mary Ann of $500 in attorney fees. Section 452.355 provides that the trial court may, after considering all rele-

vant factors, order one party to pay to the other a reasonable sum for attorney fees. As admitted by Floyd, the trial court has broad discretion in deciding whether to make such an award and what amount is to be paid. Although Mary Ann had assets sufficient to cover attorney's fees incurred in the court nisi, the trial court did not abuse its discretion in ordering Floyd to share those costs. As previously seen, Floyd's annual earnings approximate $53,-000 which amount indicates he should well be able to pay $500 toward the total cost of attorney fees without seriously encroaching on his assets. *Orth*, 637 S.W.2d at 206[11]. The original action for divorce and two subsequent requests for modification, including this matter, have all been instituted by Floyd requiring Mary Ann, as Floyd well knew, to defend herself and to incur cost of counsel. We see no merit in Floyd's point and deny same.

Judgment affirmed.

FLANIGAN and GREENE, JJ., concur.