

# Missouri Court of Appeals

## Southern District

### Division Two

IN RE THE MARRIAGE OF: )
)
GEORGE A. KOCH, )
)
    Petitioner/Respondent-Appellant, )
)
v. )   No. SD35561
)   Filed: August 2, 2019
CHRISTINE M. KOCH, )
)
    Respondent/Movant-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Steven B. Jackson, Special Judge

**<u>AFFIRMED</u>**

George Koch (Father) appeals from a judgment of modification ordering him to pay child support for his minor daughter (Child). Father argued he was exempt from paying child support because Child "was seeking to emancipate herself" pursuant to § 452.340 by "lying about her allegations that [Father] had raped her thereby destroying the parent/child relationship[.]"[1] In support of this argument, Father sought to take depositions of both Child and a detective "for the purpose of refuting the allegations[,]" but the trial court prohibited Father from taking the depositions and determined Child was not emancipated. The court

---

[1] All statutory references are to RSMo (2016). All rule references, including Form 14, are to Missouri Court Rules (2019).

further found that Father was capable of providing support, imputed income to him and ordered that he pay monthly child support.

On appeal, Father presents three points. He contends the trial court erred by: (1) denying Father "the right to take depositions" of Child and the detective as "such depositions would have [led] to the discovery of admissible evidence that [Child] was seeking to emancipate herself"; (2) finding Father capable of obtaining employment to pay child support; and (3) imputing an hourly wage for full-time work. Because Father failed to meet his burden of demonstrating reversible error, we affirm.

Our review in this court-tried case is governed by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), which requires this Court to affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id*.; *In re Marriage of Adams*, 414 S.W.3d 29, 32 (Mo. App. 2013). All evidence and reasonable inferences therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence and inferences to the contrary are disregarded. *Landewee v. Landewee*, 515 S.W.3d 691, 694 (Mo. banc 2017). We defer to the trial court regarding credibility determinations and assigning weight to witness testimony. *Metzger v. Franklin*, 496 S.W.3d 547, 549 (Mo. App. 2016). The trial court is free to believe all, none, or part of the testimony of any witness. *Archdekin v. Archdekin*, 562 S.W.3d 298, 310 (Mo. banc 2018). The party challenging the judgment bears the burden of proving error. *Id*. at 304. The following facts have been prepared in accordance with these principles.

Child was born in December 2001 when Father was married to Christine Koch (Mother). Their marriage was dissolved in March 2005, and the dissolution decree was later modified in September 2013. At that time, the modification judgment granted the parties

joint legal and physical custody of Child and designated Father's address as Child's address for mailing and educational purposes. Neither party was ordered to pay child support.

In July 2017, Child disclosed that she had been sexually assaulted by Father. Soon after, a felony complaint was filed against Father. He was charged with rape, sodomy and incest. After Father's arrest, he posted bond with the condition he have no contact with Child or any children under the age of 17 years old. Father, a doctor, lost his medical license privileges and employment due to the pending charges.

In December 2017, Mother filed her motion to modify the judgment. Citing a substantial and continuing change of circumstances, Mother requested that she be granted sole legal and physical custody of Child, and that Father have no visitation or contact with Child. Mother also requested that Father be ordered to pay child support. In response, Father filed a counter-motion to modify the judgment. In that motion, Father stipulated to Mother's request for sole custody and no contact with Child. As to child support, however, he alleged that he should be ordered to pay zero dollars ($0.00) per month because any presumed amount was "unfair and unconscionable."

In January 2018, Father sought to depose Child and a detective investigating the criminal case against Father. In February 2018, the trial court issued a protective order prohibiting Father from taking both depositions and determined that Child was not emancipated.

In April 2018, a trial was held on the parties' motions to modify. The court refused Father's request to reconsider its ruling on emancipation and limited evidence to the child support issue only. Father was the only witness to testify. Each party submitted a Form 14. Several other exhibits were admitted in evidence concerning the parties' income and

3

expenses, including Child's extensive medical expenses. At the time of trial, Child was staying at a long-term residential treatment facility.

In May 2018, the trial court entered its judgment of modification. The court found a substantial and continuing change of circumstances sufficient to grant modification of the judgment, and awarded Mother sole legal and physical custody of Child. With respect to child support, the court found that Child "is in need of support from [Father] and [he] is able-bodied and capable of providing the same for [Child]." Pursuant to Rule 88.01 and the court's own Form 14, the court calculated that Father's child support obligation was $568 per month, and ordered Father to pay that amount.

This appeal followed. Additional facts will be included below as we address Father's three points on appeal. Because Points 2 and 3 challenge the child support award, we discuss both of those points together.

*Point 1*

Father's first point challenges the trial court's decision to prohibit Father from taking depositions of Child and the detective. Our review of the court's ruling to quash the depositions is for an abuse of discretion. *See **Jones v. City of Kansas City***, 569 S.W.3d 42, 60-61 (Mo. App. 2019). The following facts are relevant to this point.

In January 2018, a month after the parties filed their motions to modify, Father issued to Mother a notice to take a videotaped deposition of Child. Father also sought to depose the investigating detective.

In February 2018, Mother filed separate motions for a protective order requesting the trial court to prohibit Father from taking either deposition. Mother's motions argued that neither deposition was "reasonably calculated to lead to the discovery of admissible evidence regarding [Father's] child support obligation, the only contested issue in this case." With

4

respect to Child, Mother further argued that her deposition is: (1) a "fishing expedition" in order to produce statements under oath of an alleged victim in a criminal case without the prosecuting attorney present to defend the deposition; and (2) would also allow Father to inquire into the sexual history of Child as "the Rape Shield Law is inapplicable to the minor child's testimony in a civil deposition[.]" With respect to the detective, Mother argued that his deposition "would cause an unnecessary expense to [Mother] as her counsel will be attending a deposition and purchasing a transcript that will have no use in the present litigation."

The trial court conducted a hearing on Mother's motions via telephone. Father's counsel argued that evidence of the truthfulness of the allegations against him was relevant to Father's responsibility to pay child support and the court's determination whether to impute income.

In March 2018, the trial court disagreed with Father and granted Mother's motions for a protective order prohibiting Father from taking both depositions. The court gave "no credence to the assertion of obtaining emancipation and permanent removal of [Father's] obligation to [provide] support based on truthfulness of the allegations[.]" The court determined that Child was not emancipated.[2]

---

[2] The court further explained that:

This Court is not blind to the likelihood that the true underlying basis for the two depositions rest with wanting to depose criminal case witnesses without opposing counsel (the prosecuting attorney) present. However, the intent or dual purpose is irrelevant to this Court. This Court's decision is based on the lack of relevance at this time of the truthfulness of [Child's] allegations in awarding child support and the potentially tremendous harm that could result to [Child]. All parties agree [Child] has been unstable and suicidal. The GAL strongly opposes the deposition stating likely harm to his client. Imputation of income does not turn on the issue [Father] wishes to interject; but, protection of specific and probable harm outweighs allowing the deposition for the best interests of [Child] regardless.

In Point 1, Father contends the "trial court erred in denying Father the right to take the depositions" of Child and the detective because "such depositions would have [led] to the discovery of admissible evidence that [Child] was seeking to emancipate herself[.]" Father's allegation of error is based entirely on the premise that the trial court "misapplied section 452.340" in determining that Child had not emancipated herself. According to Father, "Child was purposefully and knowingly lying about her allegations that [he] had raped her thereby destroying the parent/child relationship, which is effectively seeking to emancipate herself from [him]" as a matter of law. We disagree.

The termination of child support payments is governed by § 452.340.3. This subsection of the statute states:

> Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:
>
> (1) Dies;
>
> (2) Marries;
>
> (3) Enters active duty in the military;
>
> *(4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent;*
>
> (5) Reaches age eighteen, unless the provisions of [§ 452.340.4 or § 452.340.5] apply; or
>
> (6) Reaches age twenty-one, unless the provisions of the child support order specifically extend the parental support order past the child's twenty-first birthday for reasons provided by [§ 452.340.4].

§ 452.340.3(1)-(6) (italics added). The only part of the statute at issue here is § 452.340.3(4). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." ***Parktown Imports, Inc. v. Audi of Am., Inc.***, 278 S.W.3d 670, 672 (Mo. banc 2009). When the plain language and legislative

6

intent are clear, this Court is bound by the statutory language. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011). "This Court must enforce statutes as written, not as they might have been written." *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 192 (Mo. banc 2006). "Statutory interpretation is an issue of law that this Court reviews *de novo*." *Crockett v. Polen*, 225 S.W.3d 419, 420 (Mo. banc 2007).

Here, Father's theory of emancipation was that, by making allegations against him, Child was "seeking to emancipate herself" from him. That theory is not supported by the plain language of § 452.340.3(4), which requires proof that the child "[b]ecomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent[.]" As is plainly stated in the statute, the court must find that the child is self-supporting for this subsection to apply at all. If such proof is presented and believed, only then does the issue of parental control become relevant.

This is consistent with the holding in the case upon which Father relies, *Orth v. Orth*, 637 S.W.2d 201 (Mo. App. 1982). Father argues that Child's allegations against him, standing alone, were sufficient to prove emancipation as a matter of law because, according to *Orth*, "she is claiming a status, or position, inconsistent with remaining subject to parental control." Father's reliance on *Orth*, however, is misplaced. There, the daughter's emancipation turned – as § 452.340.3(4) requires – on whether she was self-supporting. *Orth*, 637 S.W.2d at 204-05. The father argued that his daughter was emancipated because she "left her home to live with friends [and] did not need her parents' help to survive." *Id*. at 205. The trial court disagreed and found that daughter relied "heavily on her parents, financially and otherwise." *Id*. Here, there is no evidence that Child is self-supporting. In fact, the evidence established quite the contrary – given her extensive medical expenses, she

is in dire need of parental support. Thus, **Orth** supports the decision made by the trial court here.

For all of the foregoing reasons, the trial court did not misapply § 452.340.3(4) in determining that Child had not emancipated herself by becoming self-supporting. Evidence of the truthfulness of Child's allegations against Father plays no part in that analysis. Consequently, the trial court did not abuse its discretion by prohibiting Father from taking the depositions of Child and the detective.[3] Point 1 is denied.

*Points 2 and 3*

Father's second and third points challenge the child support award. "Rule 88.01 explains the two-step procedure for calculating child support." **In re Marriage of Adams**, 414 S.W.3d 29, 35 (Mo. App. 2013); Rule 88.01; *see also* **Woolridge v. Woolridge**, 915 S.W.2d 372, 378 (Mo. App. 1996). In order to comply with Rule 88.01, the trial court is required to:

(1) determine and find for the record the presumed correct child support amount by using Form 14; and

(2) make findings on the record to rebut the presumed correct child support amount if the court, after consideration of all relevant factors, determines that amount is unjust and inappropriate.

**Crow v. Crow**, 300 S.W.3d 561, 564 (Mo. App. 2009); **Adams**, 414 S.W.3d at 35. In our review of the child support award, we follow "the standard enunciated in *Murphy v. Carron* … to insure that it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." **Beermann v. Jones**, 524

---

[3] For the first time on appeal, Father also argues that by denying his request for depositions, he was denied "the opportunity to present such evidence at trial, all in contravention of [his] constitutional right to due process." Because Father did not raise this constitutional issue at the earliest opportunity, he has waived it, and we do not consider it further. **Hannah v. Hannah**, 568 S.W.3d 451, 456 n.7 (Mo. App. 2019).

S.W.3d 545, 549 (Mo. App. 2017). "If this standard is met, we then review the trial court's rebuttal review of its presumed child support determination for an abuse of discretion." *Id*.; *Dodge v. Dodge*, 398 S.W.3d 49, 51-52 (Mo. App. 2013). We will reverse a child support award only if the trial court abused its discretion by ordering an amount that is against the logic of the circumstances, or is arbitrary and unreasonable. *In re Marriage of McDaniel*, 419 S.W.3d 828, 834 (Mo. App. 2013). "Stated another way, such an award will not be disturbed unless the evidence is palpably insufficient to support it." *Id*.; *see Metzger*, 496 S.W.3d at 549. The following facts are relevant to Points 2 and 3.

At the time of Father's termination, he was Vice Chief of Staff at the hospital where he worked. His pay stubs showed aggregated earnings of $536,750 from January 2016 through August 2017. Based on that aggregate amount, Father's monthly earnings were approximately $27,526. In Mother's Form 14, she listed Father's income at $27,526 per month. In Father's Form 14, he listed his income as "$0" per month.

At trial, Father testified he made no effort to obtain any employment after charges were filed against him. According to Father, he did not want to violate the bond condition that he is not allowed to be around anyone under the age of 17. Father sought and obtained a modification of that bond condition to allow him to see his 5-year-old twin daughters, but he did not seek any modification for the purpose of obtaining employment. Father also testified that he did not leave his home because of alleged damage to his reputation. During cross examination, Father clarified that people do not harass him or come to his home, but that he learned of the alleged damage to his reputation primarily online.

In the trial court's findings, the court stated that: (1) Father had "not been found guilty of any offenses" but "lost his ability to work as a doctor" from the charges alone; and (2) he cannot "earn his past income now or in the foreseeable future." Nevertheless, the trial

9

court found that Father is "able-bodied and capable of providing" support for Child. Specifically, the court found that: (1) since the onset of Father's unemployment, he has not sought a lesser replacement income; (2) no evidence of mental or physical disability renders Father unable to work; (3) any person of Father's capabilities can earn $15 per hour with full-time employment without contact with minor children under age 17 in the community; (4) Father's "appropriate imputed monthly gross income" is $2,600; (5) Mother's monthly gross income is $2,042; (6) child support calculated pursuant to Rule 88.01 and Form 14 is $568 per month; and (7) that amount "is not an unjust and inappropriate sum[.]"

In Point 2, Father contends the trial court erred in finding that Father "was capable of gaining employment" because "the only evidence presented at trial demonstrated that [he] was unable to seek employment due to the conditions of his bond … and his severely diminished reputation in the community[.]" According to Father, the evidence established he "is not employable in any capacity" and therefore, the challenged finding "lacks substantial evidentiary support and is against the weight of the evidence presented at trial." Because Father's point is deficient, we are unable to reach the merits of his arguments.

At the outset, we note that Father's point contains multiple allegations of error, and is, therefore, "multifarious in violation of Rule 84.04(d) and preserves nothing for appellate review." *Adams*, 414 S.W.3d at 33; *see* *Stroh v. Stroh*, 454 S.W.3d 351, 360 n.9 (Mo. App. 2014). Moreover, Father fails to follow the required framework for either evidentiary challenge. "Not supported by substantial evidence" and "against the weight of the evidence" are two separate challenges to the evidentiary basis of the trial court's judgment, each requiring "a distinct analytical framework[.]" *Houston v. Crider*, 317 S.W.3d 178, 186-87 (Mo. App. 2010). A not-supported-by-substantial-evidence challenge requires the completion of three sequential steps. The appellant must:

10

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

An against-the-weight-of-the-evidence challenge requires completion of four sequential steps. The appellant must:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Id.* at 187; *Adams*, 414 S.W.3d at 33-34; *In re Marriage of Chorum*, 469 S.W.3d 484, 489-90 (Mo. App. 2015). "Failure to follow the applicable framework means the appellant's argument is analytically useless and provides no support for his or her challenge." *Adams*, 414 S.W.3d at 34.

That principle applies here. Father's argument completely ignores the second step required in both challenges, to "identify all of the favorable evidence in the record" supporting the trial court's finding that Father is capable of gaining employment. *Id*. at 33. Such evidence here includes Father's professional qualifications, education, work history, and the court's ability to observe him as witness, which supports the court's finding that there was no evidence of mental or physical disability rendering Father unable to work. The

court was well aware of Father's bond conditions, but nonetheless found Father had "not been found guilty of any offenses" and was capable of gaining some employment. Because Father ignored favorable evidence and failed to follow the proper framework for his challenge, his arguments are analytically useless. Accordingly, Point 2 is denied.

In Point 3, Father contends the "trial court erred in imputing an hourly wage of … $15 … for full time work upon [Father], because there was no evidence presented at trial that any such employment even exists, much less that [Father] was offered or could be offered such employment." According to Father, the trial court's findings that Father can earn $15 per hour with full-time employment is "arbitrary and capricious[.]" We disagree.[4]

"Parents have a statutory duty to support their minor children commensurate with their ability to pay." *In re Marriage of Bottorff*, 221 S.W.3d 482, 487 (Mo. App. 2007); *see also In the Interest of T.T.G. v. K.S.G.*, 530 S.W.3d 489, 497 (Mo. banc 2017) ("financial support of a minor child is a continuing parental obligation, and a parent has a duty to contribute as much as he or she can"). Rule 88.01 provides that "[t]here is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the correct amount of child support to be awarded in any judicial or administrative proceeding." Rule 88.01(b); *see* § 452.340.9. The rule places a burden on the party seeking to rebut the Form 14 amount to show that it is unjust or inappropriate after

---

[4] Father also argues the court's finding that he can earn $15 per hour "lacks substantial evidentiary support and is against the weight of the evidence presented at trial." These arguments fail for the same reasons as explained in Point 2. The only part of Father's argument that we reach on the merits is his complaint challenging the trial court's rebuttal review and its finding that the amount of imputed income to Father "is not an unjust and inappropriate sum." As such, our review is for abuse of discretion. *Beermann*, 524 S.W.3d at 549; *Dodge*, 398 S.W.3d at 52; *see, e.g.*, *In re Marriage of Bottorff*, 221 S.W.3d 482, 487 (Mo. App. 2007).

consideration of all relevant factors. *Adams*, 414 S.W.3d at 36; *Elliott v. Elliott*, 920 S.W.2d 570, 577 (Mo. App. 1996).

Form 14 provides that the trial court may impute income to a parent. As explained in the directions and comments to Form 14, Line 1: "If a parent is unemployed … 'gross income' may be based on imputed income." *Id*. The Comment H to Form 14, Line 1 governing gross income addresses "imputed income" stating:

> H. *COMMENT: Imputed Income*: When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency shall consider all relevant factors, including:
>
> (1) The parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;
>
> (2) The parent's occupational qualifications;
>
> (3) The parent's employment potential;
>
> (4) The available job opportunities in the community; and
>
> (5) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

Form 14, Line 1: Gross Income, Direction, H Comment. "The theory behind imputing income to a spouse/parent is directed toward preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income." *Buchholz v. Buchholz*, 166 S.W.3d 146, 152 (Mo. App. 2005). "In order to avoid such a situation, a court may, *in proper circumstances*, impute an income to a spouse according to what that spouse could earn by use of his or her best efforts to gain employment suitable to that spouse's capabilities." *Jensen v. Jensen*, 877 S.W.2d 131, 136 (Mo. App. 1994) (emphasis in original). What constitutes "proper circumstances" depends on the facts and

must be determined on a case-by-case basis, but includes a situation "where a parent involuntarily lost a job but … failed to use his or her best efforts to obtain a new job." ***Buchholz***, 166 S.W.3d at 153.

Here, Father made it clear that he had not looked for any job opportunities. He chose to not even leave his home. At the time of trial, Father had a modifiable bond condition in place preventing him from contact with minors under the age of 17, but he chose not to seek modification for employment purposes. As the trial court specifically found, Father has not been found guilty of any offenses. Neither the criminal charges nor the bond condition prevented Father from seeking replacement income, but he made no effort to do so. Father was obligated to provide financial support for Child, and the trial court acted within its discretion in deciding whether to impute income to Father.[5]

In determining the amount of income to impute, the court created its own Form 14. In doing so, the court rejected Mother's Form 14, recognizing that Father could no longer "earn his past income now or in the foreseeable future." Similarly, the court rejected Father's Form 14, recognizing Father's obligation to seek "lesser replacement income" and failure to even attempt to do so. Given Father's qualifications and potential, the court imputed Father's income at the relatively low end at $15 per hour, which equals approximately $2,600 per month. We cannot say this amount is "against the logic of the circumstances or is arbitrary and unreasonable." ***McDaniel***, 419 S.W.3d at 834. Father's reliance on his own testimony to rebut that amount fails because the judge did not find that evidence credible. The court simply did not believe that Father "is not employable in any capacity" as he claims.

---

[5] Father also likened his situation to a parent who is incarcerated. That argument lacks merit because release on bond with conditions is not incarceration. More importantly, it is well settled that "incarceration does not excuse the obligation to support the needs of one's children." ***Oberg v. Oberg***, 869 S.W.2d 235, 238 (Mo. App. 1993); ***Moran v. Mason***, 236 S.W.3d 137, 140 (Mo. App. 2007).

14

Thus, viewing the evidence in the light most favorable to the trial court's decision, the court's refusal to find its Form 14 child support amount unjust or inappropriate was not an abuse of discretion. *See **Bottorff***, 221 S.W.3d at 489. Point 3 is denied.

In sum, Father failed to meet his burden of proving reversible error. *See **Archdekin***, 562 S.W.3d at 304. Accordingly, the judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR